711 So.2d 780 (1998)
Tricia ROBLING, Individually and on Behalf of Her Minor Child, Tristen Robling
v.
ALLSTATE INSURANCE COMPANY, Louisiana Farm Bureau Casualty Insurance Company, Toni Griffin and Lee Peltier.
No. 97 CA 0582.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*782 Edward J. Gaidry, Jr., Houma, for Plaintiff-Appellee Tricia Robling, et al.
Michael G. Gee, Thibodaux, for Defendant-Appellant Louisiana Farm Bureau Casualty Insurance Company.
Before GONZALES, PARRO and GUIDRY, JJ.
GUIDRY, Judge.
Defendant, Louisiana Farm Bureau Casualty Insurance Company, appeals from a trial court's judgment, finding that Tricia Robling's injuries were caused its insured and awarding plaintiff $35,000.00 in general damages and $14,531.93 in special damages. We amend and as amended, affirm.

PROCEDURAL HISTORY
On March 15, 1996, plaintiff, Tricia Robling, filed a petition for damages, individually and on behalf of her minor child, Tristen, naming as defendants Lee Peltier (Mr. Peltier) and his insurer, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau).[1] The petition also named as defendants, Toni Griffin and Allstate Insurance Company (Allstate). The record does not set forth the relationship of Toni Griffin to this suit, but does reflect that Allstate had the "underlying insurance policy" on the vehicle driven by Mr. Peltier at the time of the accident. In her petition, plaintiff asserted that on or about September 17, 1995, she was operating a 1991 Nissan Stanza traveling south on Highway 57 in Terrebonne Parish, Louisiana. As she entered the intersection of Highway 57 and Patriot Drive, plaintiff collided with a 1990 Toyota Corolla being driven by Mr. Peltier. Plaintiff further asserted that Mr. Peltier entered the intersection from Patriot Drive and failed to stop at the stop sign on Patriot Drive. Plaintiff alleged that Mr. Peltier was at fault in causing the accident and was liable to plaintiff for damages and liable to plaintiff's daughter for loss of consortium damages.
Farm Bureau[2] and Mr. Peltier filed an answer, generally denying plaintiff's claims, and alleging: (1) the comparative fault of plaintiff; (2) plaintiff's failure to mitigate her damages; and (3) that plaintiff's damages did not exceed the automobile liability insurance policy limits issued by Allstate. On May 17, 1996, Allstate and Mr. Peltier filed an answer to the petition, generally denying plaintiff's allegations.
On September 4, 1996, due to a settlement agreement, the trial court granted a partial dismissal with prejudice in favor of Allstate, Mr. Peltier and Torn Griffin. Following this partial dismissal, Farm Bureau was the only remaining defendant in the suit. On October 7, 1996, plaintiff filed an affidavit and a stipulation into the record, stating that the value of her claim, exclusive of costs and interest, did not exceed $50,000.00. In the stipulation, plaintiff also stated that she was entitled to a bench trial. On November 8, 1996, plaintiff and Farm Bureau filed a joint stipulation into the record. In this stipulation, Farm Bureau stipulated to liability. Plaintiff and Farm Bureau also stipulated to the genuineness and authenticity of the medical records surrounding this litigation.
A bench trial was held on November 12, 1996, and the sole issue before the trial court *783 was the assessment of damages. Following the trial, a judgment was rendered in favor of plaintiff for general damages in the amount of $35,000.00 and special damages in the amount of $14,531.93. The trial court also rendered judgment in favor of Farm Bureau and against plaintiff, acting on behalf of her minor daughter, Tristen, dismissing the claim for loss of consortium. It is from this judgment that Farm Bureau now appeals and alleges the following assignments of error:
1. The trial judge erred in finding that the plaintiff's shoulder was injured in the automobile accident of September 17, 1995, and her general damages should be reduced accordingly.
2. The trial judge erred in awarding the plaintiff her medical bills incurred in connection with treatment rendered to her shoulder.
3. The trial judge erred in exceeding the plaintiff's stipulation as to the amount of damages, when making its award.

CAUSATION
In assignment of error number one, Farm Bureau contends that the trial court erred in finding that the plaintiff's shoulder was injured in the automobile accident of September 17, 1995.
In a personal injury suit, the plaintiff has the burden of proving by a preponderance of the evidence a causal connection between the injury sustained and the accident. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved, through medical testimony, that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Company, 94-2603, 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759.
It is well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Where defendant's negligent action aggravates a pre-existing injury, he must compensate the victim for the full extent of his aggravation. Perniciaro v. Brinch, 384 So.2d 392, 395-96 (La.1980).
A tortfeasor is only liable for damages caused by his negligent act; he is not liable for damages caused by separate, independent or intervening causes. Thomas v. Hartford Insurance Company, 540 So.2d 1068, 1075 (La.App. 1st Cir.), writ denied, 542 So.2d 516 (La.1989). The plaintiff has the burden of proving that her injuries were not the result of separate, independent, and intervening causes. Thomas v. Hartford Insurance Company, 540 So.2d at 1075. The trial court's finding regarding causation is a factual finding and must be reviewed under the manifest error standard of review. See Housley v. Cerise, 579 So.2d 973, 979 (La. 1991).
Plaintiff testified that in May 1992, she suffered an AC separation (known as an acromio-clavicular, which is the separation of two bones in the shoulder) in her right shoulder as a result of a wrestling incident with her ex-husband. Plaintiff testified that she was treated with physical therapy and felt her shoulder was "alright" after the physical therapy. Plaintiff stated that in 1994, the freezer door of an ice cream truck fell on her right shoulder. Plaintiff testified that following the freezer door incident, she was treated at the emergency room of Terrebonne General Medical Center, and also was treated for several weeks with physical therapy.
After the freezer door incident, plaintiff experienced no problems with her right shoulder and began exercising regularly at a gym six months before the September 17, 1995 automobile accident. Plaintiff's exercise included using the treadmill, free weights, and dumbbells. Following the September 17, 1995 automobile accident, plaintiff experienced pain in her right shoulder, which she described as "constant, cracking and hurting." Plaintiff stated the shoulder pain caused her head and neck pain.
On cross-examination, plaintiff admitted that she incorrectly stated on interrogatories that she had never been involved in any automobile accidents. Plaintiff was questioned about her discovery deposition in *784 which she stated that she was not involved in any other accidents other than a May 1992 wrestling incident, a 1993 automobile accident, the freezer door incident, and the present accident surrounding this litigation. At trial, plaintiff admitted that she was also involved in at least five additional accidents, including a June 1992 falling incident, where she fell down some steps and went to the emergency room of Terrebonne General Medical Center for continued right shoulder pain. Plaintiff stated that she did not recall several of these accidents and did not recall whether she sought treatment for some of the accidents.
Although plaintiff stated that, after the freezer door incident, she had no problems with her right shoulder, plaintiff was questioned about medical records which reflected that in August 1994, she went to the emergency room of Leonard J. Chabert Medical Center because of right shoulder pain. According to plaintiff, following this visit, she had several weeks of physical therapy, and when her shoulder was better, she was released from physical therapy. Plaintiff was questioned about medical records which also reflected that she went back to the emergency room at Leonard J. Chabert Medical Center in November 1994 for shoulder pain, but plaintiff stated that this visit was just for followup. The medical report for this visit corroborated plaintiff's testimony.
According to plaintiff's deposition, before the September 17, 1995 accident, she was never offered surgery for her right shoulder. However at trial, plaintiff was asked about a medical record, which reflected that she had rescheduled an appointment for surgery work-up on her right shoulder at Leonard J. Chabert Medical Center. Plaintiff stated that she did not recall rescheduling an appointment for surgery work-up. Plaintiff claimed that during her treatment for her right shoulder injury at Leonard J. Chabert Medical Center, she was told if physical therapy did not work then she would probably need surgery. Plaintiff indicated the physical therapy worked, so surgery was unnecessary. Plaintiff admitted that, although she stated in her deposition she told Dr. O'Steen about her shoulder pain, she really did not inform him of her shoulder pain because he was concerned with her neck, head and eye injuries.
Dr. O'Steen testified as an expert in the field of chiropractic. Dr. O'Steen treated plaintiff from September 18, 1995 through October 11, 1995 (a total of six visits). On her initial visit, plaintiff was diagnosed with a cervical sprain/strain, loss of cervical lordosis and lumbo-sacral strain. Plaintiff filled out a questionnaire, stating that her main problems were neck and back pain. Dr. O'Steen stated that plaintiff indicated that she had no shoulder or lower back pain. Plaintiff completed a pain drawing which only illustrated pain in the head and neck areas. Plaintiff did not inform Dr. O'Steen orally or in writing of her history of accidents which occurred prior to the September 17, 1995 automobile accident. Dr. O'Steen testified that plaintiff did not mention her right shoulder problems or the AC separation. Dr. O'Steen stated that a history provided by a patient is important; if the history is incorrect, then his opinion as to the causation of the injury could possibly be incorrect.
Dr. O'Steen stated without plaintiff telling him about the AC separation, there was no way for him to know if the AC separation was related to the September 17, 1995 accident. Dr. O'Steen stated if the AC separation was aggravated in the accident, the aggravation would have caused some pain. Dr. O'Steen felt that if plaintiff suffered a grade two AC separation (which is a dislocation or separation of the joint), she would have experienced some symptoms.
On cross-examination, Dr. O'Steen admitted that his preliminary information questionnaire and some of his intake sheets were confusing. Dr. O'Steen acknowledged that plaintiff was inconsistent on the form by stating in one section that one of her main complaints was lower back pain and in another section, she stated that she had no problems with her lower back. Dr. O'Steen stated that this indicated plaintiff did not know what she was doing or could not read the forms. Dr. O'Steen admitted that plaintiff's markings on the pain drawing form was consistent with trapezius muscle pain. Dr. O'Steen acknowledged that the injuries suffered *785 by plaintiff could possibly mask an AC separation or the exacerbation of a pre-existing AC separation.
Dr. Kinnard testified as an expert in the field of orthopedic surgery. Dr. Kinnard examined the plaintiff on one occasion. Dr. Kinnard agreed that the history given by a patient is important for a diagnosis, a determination of causation, and treatment. Dr. Kinnard noted that, in plaintiff's history, she did not inform him of several accidents that she was involved in prior to the September 1995 accident, and in particular, plaintiff did not tell him about the 1992 wrestling incident where she suffered an AC separation of her right shoulder. Plaintiff completed a patient history and pain drawing forms and did not include shoulder pain on either document. Plaintiff made no verbal complaints of shoulder pain or pain in the AC joint area. Dr. Kinnard stated plaintiff listed neck pain as the reason for her visit.
Dr. Kinnard stated that there are three grades of an AC joint injury: a grade one is tenderness or a strain of the joint and grades two and three are a dislocation/separation of the AC joint. Dr. Kinnard stated that if plaintiff suffered a grade two or three AC joint injury along with her cervical strain, he would expect her to have symptoms in the area and some physical deformity from the separation.
On cross-examination, Dr. Kinnard acknowledged that he only examined the area of complaint, which was plaintiff's neck region, and did not examine plaintiff's shoulders. Dr. Kinnard's examination of plaintiff lasted between five and ten minutes. Dr. Kinnard noticed no problems with plaintiff's shoulders. Dr. Kinnard was told by plaintiff that she was suffering with dizzy spells and extremely "bad throbbing headaches." Dr. Kinnard noted that these injuries could possibly mask an aggravation to an AC separation.
Dr. Cenac testified on behalf of plaintiff and stated that he began treating plaintiff on October 26, 1995. Dr. Cenac stated that on this visit, plaintiff gave a history of injuries resulting from the September 17, 1995 automobile accident, which included a head injury and an injury over her left eye. Plaintiff also told Dr. Cenac that she subsequently developed pain in her neck and shoulder. Dr. Cenac stated that plaintiff also informed him of a May 1992 wrestling incident, where she suffered an AC separation of her right shoulder. Dr. Cenac limited his examination to plaintiff's neck and upper torso. Dr. Cenac noted tenderness in plaintiff's trapezius muscle group and took some x-rays. His review of the x-rays revealed a reversal of the cervical lordosis consistent with a recent injury and confirmed plaintiff's prior AC separation of her right shoulder. Dr. Cenac diagnosed plaintiff with a cervical injury and bicep tenderness in the right arm and around the shoulder area.
Plaintiff continued to see Dr. Cenac and continued to have persistent right neck and shoulder pain and tenderness around the AC joint. Dr. Cenac felt that because plaintiff's old AC separation had not been surgically repaired, plaintiff's right neck and shoulder symptoms were the result of the old injury and the right shoulder needed to be surgically repaired to prevent her bone fragments from rubbing together. Ultimately, plaintiff decided to have surgery on her right shoulder, and on July 9, 1996, Dr. Cenac performed an excision of the distal clavicle on plaintiff's right shoulder at Terrebonne General Medical Center.
Dr. Cenac stated that, on plaintiff's initial visit, plaintiff complained more of neck problems, which could have been associated with her shoulder problem. Dr. Cenac indicated that plaintiff's right shoulder problem could have caused stiffness in her neck because the trapezius muscle runs from the base of the skull to the shoulder. Dr. Cenac described plaintiff's AC separation as a fracture dislocation of the distal clavicle. Dr. Cenac stated that, following this 1992 right shoulder injury, there was a capsuling of the AC joint, which is an attempt by the ligaments to repair themselves. Dr. Cenac stated that during the surgery, he opened the capsule and observed recent calcifications, which were consistent with a recent injury. Dr. Cenac was unable to state whether these calcifications had been present for days, weeks or months. Dr. Cenac opined that, because the most recent injury to plaintiff's *786 shoulder occurred in September 1995 and he saw signs of recent calcifications, he causally related her right shoulder injury to the September 17, 1995 automobile accident. Dr. Cenac opined that plaintiff's AC separation was not caused by the automobile accident, but the accident aggravated plaintiff's previous AC separation.
Dr. Cenac stated that he was aware of the 1994 freezer door incident, but this incident did not change his opinion as to the cause of plaintiff's injury because for almost a year before the September 17, 1995 automobile accident, plaintiff did not have any documented on-going symptoms associated with the right shoulder injury. Dr. Cenac stated that he did not find it strange that plaintiff did not report her shoulder pain to Dr. Kinnard. Dr. Cenac noted the greater the magnitude of a head injury, the more likely that an individual will mask other injuries. The individual may not document minor injuries for a short period of time.
On cross-examination, Dr. Cenac stated that, in most situations, the history provided by the patient is important in a doctor's diagnosis, treatment and determination of causation of the injuries. Plaintiff did not tell Dr. Cenac about a June, 1992 falling incident in which she sought treatment for right shoulder pain. Dr. Cenac indicated that plaintiff did inform him of several of her accidents which occurred prior to the September 17, 1995 automobile accident. Plaintiff also failed to tell Dr. Cenac about a surgery recommendation for her right shoulder in November 1994. Dr. Cenac stated he could have assumed that at some point, someone would have recommended surgery to plaintiff.
Based on the evidence, the trial court rendered judgment in favor of the plaintiff. In written reasons, the trial court found that the automobile accident of September 17, 1995 caused the plaintiff an aggravation to her pre-existing AC separation. The trial court stated that it had the opportunity to assess the credibility of the plaintiff and Dr. Cenac, and pursuant to Dr. Cenac's testimony, the trial court determined the plaintiff would probably not have had surgery, but for the aggravation of her AC separation caused by the accident in question. The trial court stated that it considered the fact that plaintiff had a pre-existing AC separation prior to this accident; however, Farm Bureau must take the plaintiff as it finds her.
When findings of fact are based upon a decision regarding the credibility of witnesses, respect should be given to those conclusions, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on understanding and believing what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the appellate court will not disturb the finding absent manifest error. Canter v. Koehring, 283 So.2d 716, 724 (La.1973). After a thorough review of the record, we find sufficient evidence to support the trial court's finding that plaintiff's AC separation was aggravated by the September 17, 1995 automobile accident. No evidence was presented to controvert Dr. Cenac's determination of causation. Thus, we conclude that the trial court did not manifestly err in finding causation and awarding damages to plaintiff.

STIPULATED EVIDENCE
In assignment of error number three, Farm Bureau asserts that the trial court erred in awarding total damages in the suit above the $50,000.00 that plaintiff stipulated was the value of her claim.[3] Plaintiff argues that she stipulated that the value of her claim against Farm Bureau was $50,000.00 because Allstate was no longer a party in the suit at the time of the stipulation.
A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stevens v. Winn-Dixie of Louisiana, 95-0435, p. 7-8 (La.App. 1st Cir. 11/9/95), 664 So.2d 1207, 1212. Stipulations between the parties are binding on the trial court when not in derogation of law. Bullock v. Graham, 96-0711, p. 4 *787 (La.11/1/96), 681 So.2d 1248, 1250. Moreover, it is well settled that procedural maneuvers designed solely to deprive litigants of their right to a jury trial based on jurisdictional amounts are disfavored. Bullock v. Graham, 681 So.2d at 1250.
The record reflects that, in its answer, Farm Bureau reserved its right to request a jury trial if plaintiff claimed her damages exceeded $50,000.00. Plaintiff filed a motion and order for a bench trial with an affidavit, stating that "the value to her claim, exclusive of costs and interest, does not exceed $50,000.00." Subsequently, plaintiff filed a motion and order to withdraw her motion requesting a bench trial because there was a possibility that her claim exceeded $50,000.00. Thereafter, plaintiff settled with Allstate for $10,000.00. Just prior to the bench trial, plaintiff filed a second affidavit along with a stipulation into the record. In this affidavit, plaintiff stated that "the value of her claim, exclusive of costs and interest, does not exceed $50,000.00." In the stipulation, plaintiff stated that "the value of her claim is less than $50,000.00, exclusive of interests [sic] and costs, and she is entitled to a bench trial." Following a bench trial, the trial court rendered a judgment in favor of plaintiff awarding a total of $49,531.93, without giving Farm Bureau a credit for the $10,000.00 paid to plaintiff by Allstate.
After a thorough review of the record in its entirety, we find that the record clearly establishes that plaintiff stipulated that the $50,000.00 value of her claim referred to the total value of her damages, regardless of which defendants were involved in the litigation. We note that plaintiff used the same language in both affidavits, with the first affidavit filed into the record before the dismissal of Allstate, and the second affidavit filed into the record after the dismissal of Allstate. Plaintiff expressed no intention in her second affidavit or stipulation that "the value of her claim" only referred to the value of her damages after the settlement and dismissal of Allstate. See Triche v. Allstate Insurance Company, 96-0575, p. 6-8 (La. App. 1st Cir. 12/20/96), 686 So.2d 127, 130-32; see also Bullock v. Graham, 681 So.2d at 1250-52. Thus, the trial court was bound by the stipulation and was in error to assess plaintiff's damages at any amount in excess of $50,000.00. Consequently, we reduce plaintiff's total damage award to $40,000.00.

OTHER ISSUES
In assignments of error numbers one and two, Farm Bureau argued that, because the trial court erred in finding that plaintiff's shoulder injury resulted from the September 17, 1995 automobile accident, plaintiff's awards for general damages and medical expenses should be reduced.
Because of our finding that the trial court did not manifestly err in concluding that the aggravation of plaintiff's shoulder injury was caused by the September 17, 1995 automobile accident, we find it unnecessary to consider these alleged errors.

ANSWER TO THE APPEAL
In her answer to the appeal, plaintiff asserts that she is entitled to the payment of all costs and damages for this frivolous appeal by Farm Bureau.
Damages for a frivolous appeal are awarded pursuant to LSA-C.C.P. art. 2164. However, this statute is penal in nature and must be strictly construed. Nungesser v. Nungesser, 558 So.2d 695, 701 (La. App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990). Moreover, appeals are favored and damages for a frivolous appeal are not granted unless they are clearly due. Nungesser v. Nungesser, 558 So.2d at 702. Even when an appeal lacks serious legal merit, damages for a frivolous appeal will not be made unless it is clear that the appeal was taken solely for the purpose of delay or that appellant's counsel is not serious in the position he advocates. Fisk v. Mathews, 525 So.2d 223, 227 (La.App. 1st Cir.1988).
Since we have found merit in one of Farm Bureau's assignments of error, damages for frivolous appeal are not warranted.

CONCLUSION
For the foregoing reasons, we amend the trial court's judgment to reduce plaintiff's total damage award of $49,531.93 to $40,000.00. In all other respects, we affirm the *788 trial court's judgment. Costs of the appeal are to be shared equally between the parties.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] We note that, in her petition, plaintiff incorrectly named "Louisiana Farm Casualty Insurance Company" as "Southern Farm Bureau Insurance Company."
[2] The record reflects that Farm Bureau filed a cross-claim against Mr. Peltier, Toni Griffin and Allstate, which was later dismissed with prejudice at the request of Farm Bureau.
[3] Farm Bureau includes in this calculation the $10,000.00 settlement payment from Allstate.