878 So.2d 631 (2004)
Wesley ROBERTS, Jr. and Annie Matt Roberts
v.
OWENS-CORNING FIBERGLAS CORP., Pittsburgh Corning Corp., Owens-Illinois, Inc., Owens-Illinois Glass Co., Garlock, Inc., Crown Cork & Seal Co., Inc., Rock Wool Manufacturing Co., M.H. Detrick Co., Riley Stoker Corp., Metropolitan Life Ins. Co., Foster Wheeler Energy Corp., W.R. Grace & Co.-Conn., The Anchor Packing Co., North American Refractories Co., General Refractories Co., Kaiser Aluminum & Chemical Corp., Proko Industries, Inc., Synkoloid, Georgia-Pacific Corp., Minnesota Mining and Manufacturing Co., U.S. Miner Products Co., The Flintkote Co., Asten Group, Inc., Indresco, Inc., Uniroyal Holding, Inc., Kelly-Moore Paint Co., and the McCarty Corporation.
No. 2003 CA 0248.
Court of Appeal of Louisiana, First Circuit.
April 2, 2004.
Rehearing Denied June 28, 2004.
*636 Rick Nemeroff, Kevin McHargue, Dallas, TX, Lawrence Gettys, Joseph McKernan, Baton Rouge, Counsel for Plaintiff/Appellee Wesley Roberts, Jr.
Gary A. Bezet, Carol L. Galloway, Baton Rouge, Counsel for Defendant/Appellant Exxon Corporation.
Before: PETTIGREW, DOWNING and McCLENDON, JJ.
DOWNING, J.
Exxon Mobil Corporation (Exxon) appeals two judgments notwithstanding the verdict (JNOVs) in which it was held liable for survival damages for Mr. Wesley Roberts, Jr., and for wrongful death damages to his wife and successors arising from his development of mesothelioma after being exposed to asbestos at an Exxon site. Mr. Roberts' wife and successors (collectively, "Roberts") answer the appeal alleging that the proper judgment failed to reflect Exxon's solidary liability up to 50% and that the jury erroneously found several other defendants liable, thus decreasing Exxon's liability. For the following reasons we declare the nullity of the second entered JNOV, reverse in part the first entered JNOV, amend the first amended JNOV, and as amended, affirm.

FACTS AND PROCEDURAL HISTORY
Wesley Roberts worked as a pipefitter throughout his career from 1941 to 1981. During the 1950's, 1960's and 1970's, he was exposed to asbestos containing products while working at the Exxon refinery in Baton Rouge and at other facilities. In 1994, Mr. Roberts was diagnosed with mesothelioma. He died in 1995.
Prior to his death, Mr. Roberts and his wife filed suit against numerous manufacturers alleging that exposure to asbestos-containing products caused his disease. After his death, the lawsuit was amended to add premises owners as defendants and to assert wrongful death claims and also to add Mr. Roberts' three children as plaintiffs.
The matter came to trial against Exxon alone. Roberts had settled with all other defendants. At trial the jury found nineteen *637 defendants liable and apportioned fault.[1] Judgment was entered accordingly.
Roberts and Exxon moved for JNOV. Exxon's motion also requested a new trial or remittitur. The trial court apparently granted both JNOV motions in one judgment. It found in favor of Exxon on the issue of damages that there was no evidence to support the award for past medical expenses. It found in favor of Roberts on the issue of liability that there was no evidence to support findings of liability against five defendants.
Later, on its own motion the trial court entered a second JNOV to increase Exxon's degree of fault, stating in an order that the first JNOV was only partial. But this second JNOV altered many of the decrees of the first JNOV. Both JNOVs specifically deny all relief not expressly granted, thus denying Exxon's motions for new trial and remittitur.
In both JNOVs, except as stated above, the trial court appears to adopt the jury's verdict, including the percentage findings of fault in connection with the remaining defendants.[2]
From these judgments, Exxon appeals, asserting ten assignments of error addressing the validity of the second JNOV, challenging the trial court's finding that Exxon was negligent, suggesting that the trial court erred in dismissing liability on the part of five defendants, challenging awards for survival damages and wrongful death damages as being excessive, challenging the trial court's ruling to allow one witness to testify as a rebuttal witness, and claiming that the trial court erred in excluding prior trial testimony of two witnesses.
Roberts answered the appeal, asserting eight assignments of error, but raising only two issues in its brief.[3] They alleged that if the first JNOV is the only valid judgment, that judgment erroneously failed to hold Exxon solidarily liable for 50% of their damages as required by the applicable version of La. C.C. art. 2324 B. They further argue that the trial court erred by erroneously finding liability on the part of five settled defendants, thus reducing their entitlement to damages.

DISCUSSION

I. EXXON'S ASSIGNMENTS OF ERROR

A. Validity of Second JNOV
"A final judgment may not be amended to effect a substantive change *638 except on application for new trial, action for nullity, or timely appeal." State ex rel. Dept. of Soc. Serv. v. A.P., 02-2372, p. 8 (La.App. 1 Cir. 6/20/03), 858 So.2d 498, 503. The Louisiana Supreme Court also recognizes a jurisprudential exception that, on its own motion and with the consent of the parties, the trial court may substantively amend a judgment. Id. Courts have uniformly held substantive amendments to judgments made without recourse to proper procedures to be absolute nullities. Bourgeois v. Kost, 02-2785, pp. 7-8 (La.5/20/03), 846 So.2d 692, 696.
Here, prior to signing the second JNOV, the trial court signed an order stating that the first JNOV was only a partial judgment that did not address reapportionment of fault. The judgment then ordered that a new judgment be prepared. The first JNOV, however, clearly apportioned fault and the second JNOV clearly altered the terms of the first JNOV. And the procedure employed by the trial court is not an authorized method by which to substantively amend a judgment. La.C.C.P. art.1951. As such, the second JNOV is an invalid amendment of the first and is an absolute nullity.[4]Bourgeois, 02-2785 at pp. 7-8, 846 So.2d at 696. Exxon's assignments of error in this regard have merit.
We therefore consider the appeal and answer to appeal in connection only with the first JNOV.

B. Proof of Exxon's Negligence
Exxon's only challenge regarding its alleged negligence, is that Mr. Wesley Roberts, Jr. failed to prove that it knew or should have known that Roberts, who was, allegedly, indirectly exposed to asbestos containing products, was at risk for contracting, specifically, mesothelioma. Exxon asserts in brief that, "It is simply not relevant what Exxon knew, or should have known, about asbestos-related diseases other than mesothelioma." Exxon argues that without such specific knowledge of mesothelioma, it was without knowledge of the risk and could not be found negligent. In so arguing, Exxon asserts that Roberts failed to establish the legal cause (scope of liability or scope of protection) element of the duty/risk analysis. See Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440, p. 7 (La.3/23/01), 782 So.2d 606, 611.[5]See also Perkins v. Entergy Corporation, 98-2081, 98-2082, 98-2083 (La.App. 1 Cir. 12/28/99), 756 So.2d 388, aff'd, 00-1372, 00-1387, 00-1440 (La.3/23/2001), 782 So.2d 606. It claims that any duty it owed Roberts does not extend to risks of which it did not particularly know. To the contrary, we find that Exxon interprets the *639 scope of its liability too narrowly and we conclude Roberts has adequately established that Exxon's conduct was the legal cause for his injuries.
The Louisiana Supreme Court has unequivocally stated that, "the determination of legal cause involves a purely legal question."[6]Todd v. State, Dept. of Social Services, 96-3090, pp. 6-7 (La.9/9/97), 699 So.2d 35, 39; Perkins, 98-2081, 98-2082, 98-2083, p. 31, 756 So.2d at 410. In Perkins, this court observed that the inquiry into the existence of legal cause involves "whether a legal standard exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm. (Citations omitted.)" Id. This legal determination, however, may depend on factual determinations of foreseeability and ease of association. Id. Exxon acknowledges that it should be held liable "if it knew or should have known its conduct posed a risk of harm, but failed to take steps to prevent the risk." We therefore, evaluate this legal standard on the bases of foreseeability and ease of association, and on the policies for and against extension of the standard to determine whether it protects Mr. Roberts from the harm he suffered.

1. Foreseeability

Exxon argues that since there was no direct link established between asbestos and mesothelioma until the mid-1960's, it could not and should not have known of that danger. But it acknowledges that asbestosis was first observed in 1927 and that asbestos-induced lung cancer was recognized in 1955. Exxon also acknowledges that in 1964, it knew of the possible relationship between asbestos and pleural mesothelioma, but only in the context of insulators. It also argues that since there is no safe level of exposure to asbestos-containing products, there are no preventive steps it could have taken had it known of the risk.[7]
There is ample factual support in the record supporting the foreseeability component of the duty/risk analysis.
A report prepared for Standard Oil Company in July 1937 entitled, "Dust Producing Operations," noted that "inhalation of asbestos particles ... is even more hazardous than was originally believed[.]" Another report prepared for Standard Oil's research department dated April 12, 1949 and entitled, "Report on `Summary' of the Plant Industrial Hygiene Problems," noted that asbestos dust, among other dust exposures, were encountered widely, with occasionally heavy exposure, in insulating operations. This report noted cancer of the lungs and fibrosis as possible consequences of asbestos exposure. The report stated the need for further study of employees working in close proximity with asbestos.
Dr. Richard Lemen, a qualified expert, testified about these reports. He opined that by 1940, and clearly by the mid-1950s, it was well established that there was a causal link between asbestos and lung cancer. He testified that the first reports connecting asbestos and mesothelioma were reported in 1943 and that a competent company medical department should have been aware of this. Dr. Lemen testified that in 1958 physicians were aware of *640 and discussed malignant diseases including mesothelioma in refinery workers. He testified that asbestos and mesothelioma were causally linked in 1960. He testified that in 1964 a study was published on insulators and insulation manufacturers that showed a significant excess of asbestosis, lung cancer and other lung diseases, such as mesothelioma. Dr. Lemen stated that if Exxon had wanted to know, it could have known that asbestos was not safe to mine or to use in manufacturing.
This evidence, apparently accepted by the factfinder, establishes that Exxon knew or should have known that exposure to asbestos-containing products was hazardous when Mr. Roberts was exposed. Even if Exxon did not know of the exact hazard of mesothelioma, it knew that exposure to asbestos containing products could cause serious lung diseases and cancer. Exxon's evidence fails to show how the risk for mesothelioma was quantifiably different from that for other asbestos-related lung diseases, except perhaps that mesothelioma may require less exposure. And at the times Mr. Roberts was exposed to asbestos-containing products, the record shows that Exxon undertook few if any precautions against asbestos exposure, despite the protective measures suggested in its 1937 report.
It was foreseeable that Mr. Roberts would contract a serious lung disease from exposure to asbestos. The factfinder here could have reasonably concluded from evidence in the record that the risks for mesothelioma and other asbestos-related diseases were substantially the same. Accordingly, we conclude that the factfinder was not manifestly erroneous on the basis of lack of foreseeability in finding Exxon negligent.
Exxon cites Teel v. State, Dept. of Transp. and Dev., 96-0592, p. 9 (La.10/15/96), 681 So.2d 340, 343, for the proposition that before it could be held liable for negligence, it needed knowledge of the specific risk ("the owner knew or should have known of that risk.") To the extent that Exxon argues the adjective, "that," requires knowledge of the specific risk of mesothelioma, it interprets much too narrowly, and such reading is not justified by the case law cited. We believe that the damage suffered by Mr. Roberts is fairly encompassed within the risks Exxon knew or should have known. And, "It is well settled jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." Robling v. Allstate Insurance Co., 97-0582, p. 4 (La.App. 1 Cir. 4/8/98), 711 So.2d 780, 783.

2. Ease of Association

Here, we have no difficulty associating Mr. Nelson's contraction of mesothelioma to asbestos exposure since the record reveals that exposure to asbestos is the only known cause for the disease. And the evidence points to no intervening events that would make the association remote. Where the evidence in the record demonstrates that Mr. Roberts was exposed extensively to asbestos-containing dust and products, we cannot say the association between the exposure and the disease is too remote.

3. Policy Considerations

Regarding policy matters, Exxon argues that its duty did not extend to protecting Mr. Roberts from exposure to the asbestos-containing products that resulted in his mesothelioma. It first argues that since many manufacturers are being forced into bankruptcy, plaintiffs are shifting liability to purchasers of the products, such as Exxon; it argues the unfairness of holding a premises owner liable for risks *641 that were not specifically known to it. It further asserts that finding its acts to be the legal cause of Mr. Roberts' injuries would require businesses "to implement measures designed to guard against every potential risk which has been suggested in the scientific community, but which has not yet been proven through valid scientific studies."
We find these points are not compelling in light of La. C.C. art. 2315's stated policy that, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Regarding the first argument, Mr. Roberts' development of a fatal lung disease was a natural and probable consequence from prolonged asbestos exposure. As discussed above, we see no basis to distinguish between the consequences of known risks. Regarding Exxon's second argument, asbestos-related diseases caused by asbestos exposure are long-established realities. These diseases are and have been more than unproven potential risks suggested by the scientific community.

4. Legal Cause

Accordingly, under the facts of this case, based on foreseeability, ease of association and consideration of the competing public policies, the factfinder did not err in concluding that the scope of protection provided under Exxon's duty of care extended to a disease that developed from his exposure to asbestos. Nor did it err in finding Exxon negligent in causing Mr. Roberts' injuries.

C. Dismissed, Settled Defendants, part 1
Exxon argues that the trial court erred in dismissing, by JNOV, five defendants from the allocation of liability. These defendants were CertainTeed Corp., Fibreboard Corp., The Flintkote Co., Foster Wheeler Entergy Corp. and General Electric. And the specific basis on which the trial court entered JNOV in favor of Roberts was the lack of sufficient evidence to support the jury's findings of liability as to these defendants. We conclude that the trial court did not err in entering JNOV in favor of Roberts.
In Hunter v. Wal-Mart Supercenter of Natchitoches, 01-0299, p. 3 (La.10/16/01), 798 So.2d 936, 937-938, the supreme court reasserted that the proper standard to apply in granting a JNOV is as follows:
Judgment notwithstanding verdict (JNOV) is warranted when facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, and JNOV motion should be granted only when evidence points so strongly in favor of moving party that reasonable men could not reach different conclusions, not merely when there is preponderance of evidence for mover; if evidence opposed to motion is of such quality and weight that reasonable and fair-minded men in exercise of impartial judgment might reach different conclusions, the motion should be denied. (Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991)).
In reviewing a JNOV, an appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether or not to grant the motion. Anderson, 583 So.2d at 832. The trial court must decide whether "the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict[.]" Id. If the answer to that question is in the affirmative, then the trial judge correctly granted the motion. *642 If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Id.
In this regard, we also consider Exxon's argument that Roberts did not meet their burden of proof of showing that the jury's finding of liability as to CertainTeed, Flintkote, Fibreboard, Foster Wheeler and General Electric were clearly wrong or without evidentiary support. Therefore, Exxon argues, the trial court erroneously granted Roberts' motion for JNOV on the issue of liability. Exxon asserts that Roberts does not dispute that, given sufficient evidence of exposure, it is appropriate to find manufacturers liable in solido with Exxon. Exxon also points out that plaintiffs did not argue that Mr. Roberts was not exposed to asbestos fibers from these manufacturers' products. Exxon asserts that plaintiff's argument was that evidence of exposure was insufficient as a matter of law to support the jury's finding of liability regarding these settled defendants.
Exxon also argues that Roberts changed their argument after the jury verdict to contend that Roberts was not exposed to "respirable fibers." It appears that Exxon is arguing that "exposure" does not require respiration. Exxon apparently contends that "exposure" means being in the presence of asbestos-containing material with no requirement that the material release respirable fibers.
"Exposure" has been defined in asbestos cases as "inhalation of asbestos fibers into the lungs." Asbestos v. Bordelon, 96-0525, p. 30 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 948; Abadie v. Metropolitan Life Insurance Co., 00-344, 00-856, p. 90 n. 23 (La.App. 5 Cir. 3/28/01) 784 So.2d 46, 65 n. 23. All of the expert testimony agreed that asbestos fibers are only dangerous if inhaled. To be inhaled, asbestos fibers must be, by definition, inhalable, i.e. respirable.
Exxon correctly contends, and as Roberts' experts stated, that any exposure or inhalation, of a respirable fiber, may cause lung disease. But our courts have, as a matter of policy, required that "the claimant must show that he had a significant exposure to the product complained of to the extent that it was a substantial factor in bringing about injury." Bordelon, 96-0525 at p. 30, 726 So.2d at 948, cited in Abadie, 00-344, 00-856 at p. 90, 784 So.2d at 65. The court in Abadie was very clear that a non-settling defendant must prove, not only that a settling defendant manufactured an asbestos-containing product, but also that the products were used in such a manner that dust was emitted. Evidence of the mere physical presence of asbestos-containing material is insufficient to find a manufacturer liable to a plaintiff. Abadie, 00-344, 00-856 at p. 92, 784 So.2d at 67.
With these principles in mind, we now examine the record to determine whether the evidence points so strongly in favor of Roberts that reasonable jurors could not have reached different conclusions.
The only mention of Foster Wheeler boilers or General Electric turbines is an "x" in Mr. Roberts' work history indicating that he worked around these products. There was no evidence cited in the record, and we are unable to find any evidence of asbestos dust created by these defendants. Therefore, there was a total absence of legal proof and the trial court correctly granted JNOV in this regard.
Concluding that the trial court correctly entered JNOV in favor of Mr. Roberts on the issue of liability, we now review the JNOV for manifest error.
*643 Although Mr. Roberts mentioned asbestos cement eighteen times in his deposition, we were unable to find any mention of CertainTeed, Flintkote or Fibreboard. However, Mr. Roberts listed on his worksheet that he worked with cement manufactured by these three companies. The question then becomes whether this material was respirable. Mr. Roberts described working with asbestos cement as follows:
Q: Okay. What were the conditions like when the asbestos insulating cement was poured from the bag into the vat?
A: It was dusty, pure dust. In other words, it looked more like flour than it did paste.
We conclude that this is sufficient evidence of significant exposure to respirable fibers manufactured by these three defendants. We conclude that the trial court was manifestly erroneous in excluding liability on these three defendants.
We note Exxon's argument that Roberts judicially confessed his exposure in closing argument, but we do not credit it. A judicial confession "must be an intentional waiver relating to the opponent's proof and not merely an assertion made for some independent purpose, such as a statement made for the purpose of giving testimony. (Citation omitted.)" Scoggins v. Frederick, 98-1816, p. 7 (La.App. 1 Cir. 9/24/99), 744 So.2d 676, 683. The statements were not apparently intended as confessions. Rather, it appears Roberts was conceding the point for purposes of argument only. Further, the arguments of counsel are not considered evidence. In re Reinstatement of Venture Associates, Inc. of Louisiana, 00-0711, p. 3 n. 6 (La.App. 1 Cir. 5/11/01), 808 So.2d 650, 652 n. 6.
Finding merit in Exxon's assignment of error regarding the entry of JNOV contrary to its interest, we reverse the trial court judgment finding no liability on the parts of CertainTeed, Fibreboard, and Flintkote. We find no error in the trial court's findings of no liability on Foster Wheeler and General Electric.

D. Damages
Exxon challenges the quantum of the jury awards on Mr. Roberts' survival action and on his spouse and children's wrongful death awards. The jury awarded damages as follows:

Damages to compensate Mr. Roberts
A. Past medical expenses[8] $ 500,000
B. Past pain and suffering $1,500,000
C. Past loss of enjoyment of life $ 500,000
D. Past mental anguish $1,000,000
 __________
 TOTAL $3,500,000
Wrongful death damages
Annie Matt Roberts $1,000,000
Sheila Jane Huffman $ 250,000
Wesley Roberts, III $ 250,000
Loxley Ann Oufnac $ 250,000

The fact finder is given much discretion in the assessment of damages. La. C.C. art. 2324.1. Damage awards on appellate review will be disturbed only when there has been a clear abuse of that discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse as to the fact finder's much discretion. Emery v. Owens-Corporation, 00-2144, pp. 21-22 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, 457, writ denied, 02-0635 (La.5/10/02), 815 So.2d 842; Reck v. Stevens, 373 So.2d 498, 501 (La.1979).
*644 In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993) (citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976)), the court instructed that, "Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion."
Exxon suggests that we abandon this seemingly settled jurisprudence and suggests we look to other case law for guidance to assist us in determining whether the awards are excessive. Exxon cites pre-Coco jurisprudence in favor of its position. The answer is simply that we cannot. We are bound to follow the instructions of the Louisiana Supreme Court. Pelican State Associates, Inc. v. Winder, 253 La. 697, 706, 219 So.2d 500, 503 (1969); Willis v. Letulle, 597 So.2d 456, 460 (La.App. 1 Cir.1992).
Accordingly, we review the above awards for abuse of discretion and under the specific facts and circumstances of this case we find no abuse of discretion.

Mr. Roberts' general damages
The record reflects that Mr. Roberts suffered incredible pain. By his own statement to his doctors, the pain was a "ten out of ten." The morphine pump given three months before his death only temporarily eased his pain and could not keep the pain under control. One of his doctors testified of the incredible pain caused by mesothelioma and stated that, "Every breath becomes painful." Mr. Roberts suffered despondency and humiliation.
The jury heard all the evidence and made its awards. Given the compelling evidence of Mr. Roberts' pain and suffering, loss of enjoyment of life and mental anguish, we cannot conclude the jury abused its vast discretion.

Wrongful death award to Mr. Roberts' spouse
Mrs. Roberts was married to Mr. Roberts for forty-five years. She quit work to be with her husband once he was diagnosed with mesothelioma. She left her home and moved into an apartment in Baton Rouge so that Mr. Roberts could be close to his doctors. She took over all the tasks Mr. Roberts used to perform around the house. She took care of him during his illness and held his hand when he died. She misses him terribly, especially around the holidays. The jury did not abuse its discretion in awarding damages to Mrs. Roberts for wrongful death in the amount it decided was fair and appropriate.

Wrongful death awards to Mr. Roberts' children
The children lost a confidant and companion and an excellent grandfather for their own children. They all feel empty at their great loss. The awards for wrongful death to these children under the circumstances described in the record seem reasonable and within the jury's discretion.
Concluding the jury did not abuse its discretion in awarding general survival damages and wrongful death damages in the amounts it considered fair and appropriate, we cannot substitute our judgment for the jury's. Exxon's assignment of error in this regard lacks merit.

E. Evidentiary issues

Rebuttal testimony of Dr. Samuel Hammar
Exxon argues that Dr. Hammar should have been excluded as a rebuttal witness because the testimony to be rebutted was not new. It also argues that rebuttal was used to offer cumulative evidence regarding the diagnosis of mesothelioma. *645 For the following reasons, we conclude the trial court did not abuse its discretion in allowing Dr. Hammar's testimony.
Louisiana Code of Evidence art. 611 E gives a plaintiff the right to rebut evidence adduced by his opponents. Rebuttal evidence should be confined to matters raised by defendants. State ex rel. Guste v. Nicholls College Foundation, 592 So.2d 419, 422 (La.App. 1 Cir.1991). But admission of rebuttal evidence is within the trial court's discretion. Id.
Here, the trial court observed that, "[y]ou should be permitted to bring out rebuttal evidence to rebut things not specifically covered in the plaintiffs case in chief." The trial court then limited Dr. Hammar's rebuttal testimony to "specific matters brought out by Dr. Sherwin" generally relating to Dr. Sherwin's seven step process of determining disease and to dispute about his methods. The trial court noted its own discretion in allowing this testimony.
And Dr. Hammar's testimony specifically refuted the degree of difficulty in diagnosing mesothelioma and the likelihood of confusion between mesothelioma and adenocarcinomas. Dr. Hammar challenged the appropriateness of a diagnostic test employed by Dr. Sherwin. He refuted Dr. Sherwin's explanation of the growth of mesothelioma. He further refuted Dr. Sherwin's theory on the cause of the tumor encasing Mr. Roberts' lung.
The record does not contain a copy of the report allegedly turned over to Roberts six weeks earlier containing Dr. Sherwin's opinions and conclusions. Even so, in Wingfield v. State, Dept. of Transp. and Dev., 01-2668, p. 22 (La.App. 1 Cir. 11/8/02), 835 So.2d 785, 803, writs denied, 03-0313, 03-0339, 03-349, (La.5/30/03), 845 So.2d 1059, 1060, this court found no abuse of discretion where the rebuttal testimony was generally in the same areas as the initial testimony but where rebuttal testimony disputed the expert's opinion on an evidentiary issue. Here, we similarly conclude that Dr. Hammar's rebuttal testimony, as limited by the trial court, was not unduly repetitious or prejudicial, and allowing the testimony did not constitute an abuse of discretion.
Exxon's assignment of error in this regard lacks merit.

Exclusion of Professor James Hammond's prior trial testimony
Exxon argues that the trial court erred in excluding prior trial testimony of Professor Hammond under La. C.E. art. 804 B(1) since he was an unavailable witness due to illness, infirmity and being outside the trial court's jurisdiction. La. C.E. art. 804 B(1) provides as follows:
B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception.
In denying Exxon's motion to admit Professor Hammond's testimony from a prior trial, the trial court found that it would be unable to separate Dr. Hammond's factual testimony from his opinion testimony, which is specifically inadmissible under La. C.E. art. 804 B(1). It concluded that the prior testimony was inadmissible because Roberts' counsel had not *646 thoroughly cross-examined Professor Hammond at the prior trial and did not have an opportunity to do so now, thus depriving Roberts of meaningful cross-examination. It also ruled that Hammond was not truly unavailable.
It is undisputed that Dr. Hammond's testimony would have been beneficial to Exxon. But the trial court did not abuse its discretion in disallowing this testimony. The trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Emery v. Owens-Corporation, 00-2144, p. 6 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, 448.
Exxon argues that Dr. Hammond was truly unavailable because of the state of his health and his residence in Texas. The trial court, however, specifically minimized unavailability as a basis for his ruling. Exxon also argued that it could have avoided Professor Hammond's opinion testimony in its presentation of his testimony. Even accepting these as true for argument purposes, we cannot conclude the trial court abused its discretion where it found that the prior cross-examination was not conducted thoroughly at the prior trial. The trial court's ruling in this regard does not preclude such evidence ever being introduced, as Exxon argues. Rather, it reflects the trial court's broad discretion in weighing the relevance and prejudice connected with such evidence.
Exxon's assignment of error in this regard lacks merit.

Exclusion of Dr. Neill Weaver's prior trial testimony
Exxon next argues that the trial court erred in excluding the prior trial testimony of Dr. Weaver. The trial court found that Dr. Weaver was unavailable because he was called away after his wife became very ill. It disallowed his prior testimony, however, because evidence that was excluded in the other case was admitted during this trial. The court excluded Dr. Weaver's testimony because Roberts' counsel had not been able to cross-examine Dr. Weaver about that evidence. Stating that it wanted to be fair to both sides, the trial court also offered to leave the trial open until the next Monday so that Dr. Weaver could return to testify live. Exxon did not choose to exercise this option.
Again, while Dr. Weaver's testimony would have been helpful to Exxon, the trial court had a reasonable basis for excluding his testimony. Accordingly, the trial court did not abuse its discretion in this regard. Exxon's assignment of error in this regard is without merit.

II. ROBERTS' ASSIGNMENTS OF ERROR ON ANSWER TO APPEAL

F. Dismissed, Settled Defendants, part 2
Roberts argues that the trial court erred in finding Babcock & Wilcox, Combustion Engineering, Inc., Riley Stoker Corp., Garlock, Inc and Gasket Holding, Inc. (f/k/a Flexatellic) liable for his injuries, asserting that the record contained no evidence of their liability. He argues specifically that there is no evidence that Roberts was exposed to any respirable asbestos fibers from these manufacturers' products.
Mr. James D. Garrene, a boilermaker who worked with Mr. Roberts clearly states that Mr. Roberts worked around Riley-Stoker boilers, Combustion Engineering boilers and Babcock and Wilcox boilers. He was not sure about turbines. He further explained how asbestos was released from work on these boilers into the air in Mr. Roberts' presence thereby establishing exposure to respirable *647 fibers. The trial court was not manifestly erroneous in finding liability as to these defendants.
Mr. Roberts testified in his deposition that he cut Garlock gaskets and he specifically testified that he couldn't help but breathe the dust. He said, "it was so thick, it was like smoke." The trial court was not manifestly erroneous in finding liability as to this defendant.
Mr. Roberts testified he recognized the Flexatellic asbestos gasket but there is no evidence he ever cut one, or in any way released respirable fibers from one. The trial court was manifestly erroneous in finding Gasket Holding, Inc. (f/k/a Flexatellic) liable.
Accordingly, the trial court was not manifestly erroneous in finding that the products of Babcock & Wilcox, Combustion Engineering, Inc., Riley Stoker Corp., and Garlock, Inc. were substantial contributing factors in causing Roberts' injuries and that these manufacturers should be held liable for his resulting damages. But, the trial court was manifestly erroneous in finding that Gasket Holding, Inc. (f/k/a Flexatellic) was a substantial contributing factor in causing Roberts' injuries and this manufacturer should not be held liable for the resulting damages.
This assignment of error has partial merit.

G. Allocation of fault

Survival award
Both Roberts and Exxon[9] argue that Exxon's liability for its virile share of survival damages should be adjusted. The judgment as here amended, however, allocates fault among sixteen defendants. Both parties are correct that Mr. Roberts' survival damage award should be allocated according to virile shares. The law in effect at the time of the asbestos exposure applies contributory negligence and virile share principles. Cole v. Celotex Corp., 599 So.2d 1058. Since Mr. Roberts' exposures occurred prior to the 1979 enactment of the Louisiana Comparative Fault Law, virile share principles apply. Id.
Accordingly, we amend the judgment to reflect Exxon's virile share of Mr. Roberts' survival damages, which total $187,500.00. This sum reflects the total allowed survival award of $3,000,000.00 divided by the 16, the number of defendants held liable.

Wrongful death awards
Roberts argues that Exxon should be held solidarily liable for 50% of the wrongful death awards to Mr. Roberts' spouse and children under solidarity liability principles in effect at the time of his death because none of the tortfeasors were found to be individually liable for more than 50% of the damages. For the following reasons, we disagree.
A wrongful death action arises only if and when the victim dies. The action compensates the beneficiaries for their own individual injuries that occur at the moment of the victim's death and thereafter. Walls v. American Optical Corp., 98-0455, p. 9 (La.9/8/99), 740 So.2d 1262, 1270. The law in effect at the time of decedent's death controls. See Walls, 98-0455 at p. 10, 740 So.2d at 1270. And in 1995 at the time Mr. Roberts died, La. C.C. art. 2324 B provided in pertinent part that "liability for damages caused by two or more persons shall be solidary only to *648 the extent necessary for persons suffering injury, death, or loss to recover fifty percent of his recoverable damages." Accordingly, Roberts argues that Exxon's solidary liability should be set at 50%.
Exxon, however, argues that it is entitled to a credit for the percentages of proportionate fault attributable to the settled defendants; otherwise Roberts could collect more than 100% recovery for their injuries, here 137 1/2%. Exxon relies on Taylor v. United States Fidelity & Guar. Ins. Co., 630 So.2d 237, 239 (La.1993) where the Louisiana Supreme Court observed:
Although Articles 1803 and 1804 were enacted in 1985 ..., Louisiana courts have long recognized that when a plaintiff settles with and releases one of several joint tortfeasors, he thereby deprives the remaining obligors of the right to contribution against the released obligor.... And when the adoption of comparative fault introduced the concept of apportioning fault among joint tortfeasors who are solidary obligors, the rule emerged that a plaintiff's settlement with one solidary obligor reduces his recovery against the remaining obligors by the percentage of the proportionate fault of the released obligor. The amount received by the plaintiff in settlement is irrelevant to the calculation of the amount of the reduction. Of course, the reduction applies only when the remaining defendants prove at trial that the released party was a joint tortfeasor and therefore solidarily liable. (Internal notes and citations omitted.)
See also Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496, p. 8 (La.6/30/95), 657 So.2d 975, 981.
Here, it is not disputed that the settling defendants were proven to be joint tortfeasors and solidarily liable. The record indicates that all liable defendants except Exxon had settled at the time of trial. And the proportionate fault of the liable settling tortfeasors is collectively 79%. Exxon's liability was set at 12 1/2%. Liability for 8 1/2% fault remains unattributed.[10] Applying the above principles, Exxon should be solidarily liable for the unsatisfied portion of liability to Roberts. We conclude that Exxon is solidarily liable for 21% of Roberts' wrongful death damages.
Roberts argues, nonetheless, that not to hold Exxon 50% solidarily liable would controvert the solidary liability imposed by La. C.C. art. 2324 B. We disagree. Exxon is entitled by law to reduce its liability to Roberts by the percentage of the proportionate fault of the released obligors. See Cavalier, 94-1496 at p. 8, 657 So.2d at 981. Accordingly, we hold Exxon solidarily liable for 21% of Roberts' wrongful death damages, representing the unsettled proportionate liability including Exxon's. Accordingly, we amend the judgment in this regard.

DECREE
For the foregoing reasons, we declare the nullity of the second JNOV signed November 13, 2002, we reverse in part the first JNOV and amend the judgment. We vacate the allocation of Exxon's percentage fault on Roberts' survival action and allocating fault by Exxon's virile share, as follows:

*649 IT IS ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of Plaintiffs ANNIE MATT ROBERTS, SHEILA JANE HUFFMNA, WESLEY EVNUE ROBERTS, III, and LOXLEY ANN OUFNAC, and against Exxon Mobil Corporation in the sum of One hundred eighty seven thousand five hundred and no/100 dollars ($187,500.00), together with interest thereon from March 15, 1995 (the date the original action was filed) until paid. This sum of $187,500.00 rendered against Exxon Mobil Corporation reflects its virile share of the amount awarded by the jury for survival damages, based upon the number of entities for whom the jury found liability (16).
We vacate the allocations of Exxon's percentage fault on Roberts' wrongful death actions and allocate fault by Exxon's solidary liability, as follows:
IT IS ORDERED, ADJUDGED and DECREED that judgment is entered in favor of ANNIE MATT ROBERTS, individually, and against defendant, Exxon Mobil Corporation in the sum of One hundred nineteen thousand forty-seven and 61/100 dollars ($119,047.61) together with legal interest thereon from April 17, 1996 (the date the petition was amended to include wrongful death) until paid. This sum rendered against Exxon reflects the sum for which Exxon is solidarily liable (21%).
IT IS FURTHER ORDERED, ADJUDGED and DECREED that judgment is entered in favor of SHEILA JANE HUFFMAN, individually, and against defendant, Exxon Mobil Corporation in the sum of Fifty two thousand 500 and no/100 dollars ($52,500.00) together with legal interest thereon from April 17, 1996 (the date the petition was amended to include wrongful death) until paid. This sum rendered against Exxon reflects the sum for which Exxon is solidarily liable (21%).
IT IS FURTHER ORDERED, ADJUDGED and DECREED that judgment is entered in favor of WESLEY E. ROBERTS, III, individually, and against defendant, Exxon Mobil Corporation in the sum of Fifty two thousand 500 and no/100 dollars ($52,500.00) together with legal interest thereon from April 17, 1996 (the date the petition was amended to include wrongful death) until paid. This sum rendered against Exxon reflects the sum for which Exxon is solidarily liable (21%).
IT IS FURTHER ORDERED, ADJUDGED and DECREED that judgment is entered in favor of LOXLEY ANN OUFNAC, individually, and against defendant, Exxon Mobil Corporation in the sum of Fifty two thousand 500 and no/100 dollars ($52,500.00) together with legal interest thereon from April 17, 1996 (the date the petition was amended to include wrongful death) until paid. This sum rendered against Exxon reflects the sum for which Exxon is solidarily liable (21%).
In all other respects, the trial court's judgment entered September 19, 2002 is affirmed. Costs are taxed one-half each to the plaintiffs and to Exxon.
SECOND JNOV DECLARED A NULLITY; JUDGMENT REVERSED IN PART; JUDGMENT AMENDED; AFFIRMED AS AMENDED.
PETTIGREW and McCLENDON, JJ., concur without reasons.
NOTES
[1] Exxon named these other defendants because, as a nonsettling tortfeasor, it was entitled to a reduction in a judgment only if could prove at trial that the settled defendants were at fault and solidarily liable. See Farbe v. Casualty Reciprocal Exchange, 00-0076, p. 5 (La.7/6/00), 765 So.2d 994, 997.
[2] The law allows the entry of partial JNOVs on the issues of liability and damages. See La. C.C.P. art. 1811 F. Once the jury verdict is set aside under the strict JNOV standards, however, the trial court then becomes the trier of fact. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 834 (La.1991). "[W]hen a trial court decides to grant a motion for JNOV, it then becomes the responsibility of the trial court to review the award de novo, including the calculation of comparative fault." McAshan v. Jack's Pest Control, 99-1068, on rehearing, 782 So.2d 1 (La.6/21/00), interpreting Anderson. We are unaware of any provision that precludes a trial court from independently arriving at some or many of the same conclusions as did a jury. Here, no party assigns error to this aspect of the JNOVs.
[3] Under the Uniform Rules  Courts of Appeal 2-12.4, we consider abandoned those assignments of error not briefed. Particularly, by answer to appeal, Roberts raised as an assignment of error but did not brief the trial court's entry of JNOV on the issue of the lack of evidentiary support for the jury's award of past medical damages. This assignment of error is specifically deemed abandoned.
[4] We do not address the validity of a second judgment that might make further disposition of matters not addressed in a first judgment, e.g., where a first judgment fails to cast a party in judgment.
[5] As articulated by the Supreme Court, the five elements of the duty/risk analysis are as follows:

(1) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
(2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element);
(3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element);
(4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
(5) proof of actual damages (the damages element).
Perkins v. Entergy Corp., 00-1372, 00-1387, 00-1440 at p. 7, 782 So.2d at 611.
"If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." Id. Here, Exxon challenges only the legal cause (scope of liability/protection) element.
[6] See Perkins, 98-2081, 98-2082, 98-2083, p. 34 n. 52, 756 So.2d at 412 n. 52, for an examination of whether the determination of legal cause is a legal or factual question.
[7] Exxon fails to explain why it was necessary to continue to expose pipefitters such as Mr. Roberts to asbestos-containing products once it became aware of the potential for the contraction of asbestos-related diseases.
[8] This award for this sum has been dismissed by JNOV pursuant to Exxon's motion. Roberts does not contest this reduction on appeal.
[9] In an alternative assignment of error asserted in the event this court had ruled either JNOV judgment to be enforceable, Exxon argued that the trial court erred in increasing its virile share of the survival award. Roberts argues by assignment of error that Exxon's virile share should be increased.
[10] We have concluded that insufficient evidence exists against Foster Wheeler, General Electric and Gasket Holdings (f/k/a Flexatellic). Accordingly, the fault formerly attributed to them is now unattributed. Foster Wheeler had been assigned 2% fault; General Electric had been assigned 2% fault; Gasket Holdings had been allocated 4.5%. Collectively, these represent 8.5% fault allocation.