[No. B226089. Second Dist., Div. Five. Apr. 26, 2012.]

MARILYN DAVIS et al., Plaintiffs and Appellants, v.
FOSTER WHEELER ENERGY CORPORATION, Defendant and
Respondent.

**COUNSEL**

DeBlase Brown Eyerly, Patrick DeBlase, Michael C. Eyerly; Kiesel Boucher Larson, Raymond P. Boucher; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Plaintiffs and Appellants.

Sedgwick, Frederick D. Baker and Kelly Savage Day for Defendant and Respondent.

OPINION

**ARMSTRONG, J.**—Plaintiffs and appellants Marilyn Davis, John Davis, Tim Davis, and Jeff Davis appeal from the judgment entered in favor of defendant and respondent Foster Wheeler Energy Corporation, after Foster Wheeler's motion for summary judgment was granted. We affirm.

### Background

In the 1960's, Ronald Davis (husband to Marilyn and father to the other plaintiffs) worked at the Shell Chemicals plant in Torrance as an instrument technician. Foster Wheeler designs and manufactures steam generating equipment. There were three Foster Wheeler boilers at the Shell plant while Ronald Davis worked there, and Davis at times worked near those boilers.

Ronald Davis was diagnosed with mesothelioma in 2008, and died in 2009.

Plaintiffs sued Foster Wheeler and many others, bringing causes of action for negligence, strict liability, breach of warranty, and loss of consortium,[1] on factual allegations that Davis was exposed to defendants' asbestos and asbestos-containing products and that defendants failed to warn of the dangers of those products.

Foster Wheeler moved for summary judgment on the ground that it did not manufacture, sell, or distribute any asbestos-containing product, that Davis was not exposed to asbestos dust emanating from any Foster Wheeler product, and raising other defenses. Plaintiffs' response was that Foster Wheeler was liable because its boilers contained asbestos insulation and because it failed to warn Davis of the dangers of working around that insulation, and that Foster Wheeler was liable because it had itself exposed Davis to asbestos by removing asbestos-containing insulation from the boilers to perform routine maintenance.

■ Foster Wheeler's motion was granted, judgment was entered, and this appeal was filed. Subsequently, our Supreme Court decided *O'Neil v. Crane Co.* (2012) 53 Cal.4th 335 [135 Cal.Rptr.3d 288, 266 P.3d 987], which concerned the liability of a manufacturer of pumps and other equipment for injury caused when third party asbestos was released when the equipment

---

[1] As to certain other of the defendants, there was also a cause of action for premises liability.

was serviced. *O'Neil* held that "a product manufacturer generally may not be held strictly liable for harm caused by another manufacturer's product" (*id.* at p. 362), finding that a manufacturer's duty does not extend to "preventing injuries caused by *other* products that might foreseeably be used in conjunction with a defendant's product," and that manufacturers do not have a duty "to warn about the dangerous propensities of products they do not design, make, or sell" (*id.* at pp. 342–343).

We invited the parties to file supplemental briefs on the effect of that case on this one. In response, plaintiffs argued that there are still two grounds for reversal.

First, plaintiffs contend that *O'Neil* does not affect their theory that Foster Wheeler is liable because its employees exposed Davis to asbestos dust by stripping old insulation from Foster Wheeler boilers in order to perform routine maintenance on the boilers. They contend that there is a triable issue on the facts, and that Foster Wheeler "cannot articulate anything that would immunize it from liability if its employees actually engaged in that conduct."

Next, plaintiffs have an argument that concerns discovery. They contend that there may be evidence that Foster Wheeler directed the use of asbestos on the boilers, but that Foster Wheeler had not produced the evidence prior to the summary judgment.

## Discussion

### 1. *Boiler Maintenance*

It was essentially undisputed that Foster Wheeler did not manufacture or sell asbestos-containing products, and that there was no asbestos insulation inside the Foster Wheeler boilers. Plaintiffs' theory is that there is a triable issue on whether Davis was exposed to asbestos dust when Foster Wheeler employees stripped old asbestos-containing insulation from the outside of the boilers, during the twice-a-year maintenance.

Plaintiffs' evidence on this point is found in the deposition testimony of a coworker of Davis's, Claude Chabot, which plaintiffs proffered in response to Foster Wheeler's motion for summary judgment.

In the evidence submitted by plaintiffs, Chabot testified that Foster Wheeler contractors worked on the three Foster Wheeler boilers, elaborating that he knew that a contractor was a Foster Wheeler contractor because "he had a hat with a 'FW' on it," and that he saw this contractor come into the plant twice a year, each time for a period of two weeks. Chabot was asked

what he saw those contractors doing, and answered, "they were taking the insulation out and opening up the boiler and working." He testified that he was sure that Foster Wheeler contractors were removing the insulation.

Chabot also testified that the new insulation that was installed on the boilers was in packages which said, "Johns Manville," "asbestos-containing,"[2] and "Kelloggs," and that Kelloggs was "a contractor that installed the insulation." Chabot did not know who brought the insulation to the plant.

In response, Foster Wheeler produced additional deposition testimony from Chabot, in which he testified that insulators removed the insulation from the boilers, and that those insulators were the same people whom he saw installing the insulation. He was asked, "At this point, do you know who employed the insulators that you saw removing insulation off the exterior of the boilers or furnaces, as well as installing the insulation? Do you know who employed them?" He answered, "Shell ordered from a contractor . . . ," then testified that he did not know which insulation contractor Shell had hired. He was asked, "You have no information or knowledge that this contractor you associated with Foster Wheeler either removed or installed any insulation on the exteriors of any furnaces or boilers at Shell Chemical Torrance; is that true?" He answered, "Yes, that's true."

On this record, the trial court decided that "no reasonable jury considering this opposing testimony would conclude that the [Foster Wheeler] workers are the workers who removed the asbestos insulation around the Foster Wheeler boilers."

Plaintiffs contend that there was a triable issue on the question. They cite the rule that " 'the task of disambiguating ambiguous utterances is for trial, not for summary judgment.' [Citation.]" (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 541 [113 Cal.Rptr.3d 327, 235 P.3d 988].) That rule refers to the task of determining the meaning of ambiguous statements, and means that "[d]etermining the weight of discriminatory or ambiguous remarks is a role reserved for the jury." (*Ibid.*)

Plaintiffs also cite *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098], but that case concerned a motion for judgment notwithstanding the verdict, based on a contention that a witness's testimony was so internally inconsistent as to be useless. It was in that context that the Supreme Court cited the established rule that "the fact that

---

[2] The trial court found that the presence of asbestos in the insulation could be inferred from the fact that it was Johns Manville insulation. We do not believe that that was a reasonable inference, but, as noted, there was testimony that the insulation contained asbestos.

inconsistencies may occur in the testimony of a given witness does not require that such testimony be disregarded in its entirety for the purposes of a motion for judgment notwithstanding the verdict, nor does it mean that such testimony is necessarily insufficient to support the verdict. It is for the trier of fact to consider internal inconsistencies in testimony, to resolve them if this is possible, and to determine what weight should be given to such testimony." (*Id.* at p. 878.)

In this case, the testimony is not ambiguous, but is contradictory, and the issue is not a motion for judgment notwithstanding the verdict. Instead, the issue is whether with Chabot's internally contradictory testimony plaintiffs established the existence of a triable issue of fact, and on de novo review (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939–940 [51 Cal.Rptr.3d 1]) we agree with the trial court that it did not.

■ Moreover, we can see no theory, pre- or post-*O'Neil*, which would make Foster Wheeler liable to Shell employees because it was hired by Shell to perform maintenance on equipment at Shell's plant. As Foster Wheeler argues, on this record, there is no evidence that Foster Wheeler supplied asbestos-containing insulation to Shell or caused it to be put on the boilers after the twice-yearly maintenance, or that Foster Wheeler had any knowledge, expertise, or responsibility concerning Shell's worker safety. At the very minimum, a theory against Foster Wheeler on these facts would be something other than a products liability theory, and would not be encompassed by the complaint.

Plaintiffs argue that Foster Wheeler "cannot articulate anything that would immunize it from liability if its employees" stripped asbestos insulation from the boilers, creating dust, but the argument is misplaced. On summary judgment, Foster Wheeler had only to address the allegations and theories in the complaint. (*Lewinter v. Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1223 [32 Cal.Rptr.2d 305].)

### 2.   *The discovery issue*

In *O'Neil*, the Supreme Court noted that there is an exception to the rule that a product manufacturer may not be held liable for another manufacturer's product, where "the defendant participated substantially in creating a harmful combined use of the products . . . ." (*O'Neil v. Crane Co., supra*, 53 Cal.4th at p. 362.) That court also noted that "A stronger argument for liability might be made in the case of a product that *required* the use of a defective part in order to operate. . . . [I]f the product manufacturer specified or required the use of a defective replacement part, a stronger case could be made that the manufacturer's failure to warn was a proximate cause of resulting injury. In both

contexts, however, the policy rationales against imposing liability on a manufacturer for a defective part it did not produce or supply would remain. (See *post*, at pp. 362–363.) These difficult questions are not presented in the case before us, and we express no opinion on their appropriate resolution." (*Id.* at p. 350, fn. 6.)

Plaintiffs argue that there may be evidence that Foster Wheeler "participated substantially" in the use of asbestos insulation near Davis, then argue that Foster Wheeler did not carry its burden on summary judgment because it did not establish the lack of such evidence.

This argument refers to Foster Wheeler's response to a request for production of documents. We cannot find the request itself in our records, but in the answer, Foster Wheeler wrote that it had conducted a preliminary search "to determine if there is any indication of . . . contracts to furnish equipment or construction services to the Shell plant in Torrance, California." Foster Wheeler wrote that it had located records of four contracts to furnish equipment or services, then wrote: "It is unknown at this time whether any asbestos-containing materials were supplied for, or otherwise incorporated into, any of the equipment or construction services involved in these contracts. Any role Defendant might have had in the installation and/or erection of any equipment at the customer's premises would be dependent upon each individual contract and, on many occasions, be subject to specification, direction and control of the customer/owner. Defendant submits that any remaining and available contract documents, which will be made available to Plaintiffs' counsel at a mutually convenient date and time, would be the best evidence of what transpired in connection with each such contract, including whether any asbestos-containing materials were used and, if so, at whose direction."

We see no ground for reversal. Plaintiffs submitted the discovery response with their response to summary judgment, but did so only in support of a proposed undisputed fact that "Foster Wheeler conducted only a 'preliminary' search for documents . . . and even based on that insufficient search, Foster Wheeler found documentary evidence that it was present at the Shell plant in Torrance, California during the relevant time period."

That response is not sufficient to raise a triable issue concerning Foster Wheeler's participation in the use of asbestos-containing insulation in the Shell plant. It would not even inform the trial court that there was a legal issue on that point. Further, as Foster Wheeler argues, plaintiffs did not ask for a continuance for further discovery. Plaintiffs did not raise this issue in the trial court, and may not prevail on it now. (*Lewinter v. Genmar Industries, Inc., supra*, 26 Cal.App.4th 1214.)

## Disposition

The judgment is affirmed. Respondent to recover costs on appeal.

Turner, P. J., and Kriegler, J., concurred.

A petition for rehearing was denied May 9, 2012, and appellants' petition for review by the Supreme Court was denied August 8, 2012, S203079.