J-A05008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NORMAN J. STERLING AND LAURA M. STERLING, H/W | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| P&H MINING EQUIPMENT, INC. A/K/A JOY GLOBAL SURFACE MINING, INC. | |
| Appellee | No. 1006 EDA 2014 |

Appeal from the Order Entered February 24, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2012 No. 3461

BEFORE:  GANTMAN, P.J., SHOGAN, J., and ALLEN, J.

MEMORANDUM BY GANTMAN, P.J.:　　　　　**FILED MARCH 16, 2015**

Appellants, Norman J. Sterling and Laura M. Sterling, H/W, appeal from the order entered in the Philadelphia County Court of Common Pleas, which entered summary judgment in favor of Appellee, P&H Mining Equipment, Inc. ("P&H").  We affirm.

In its opinion, the trial court set forth the relevant facts and procedural history of this appeal as follows:

> On October 24, 2012, [Appellants] commenced this suit against fifty-eight (58) defendants, alleging [Appellant] Mr. Sterling developed lung cancer [and asbestos-related lung diseases] from his exposure to various asbestos-containing products while employed by Bethlehem Steel Corporation from roughly 1952 to 1979.  With respect to P&H, [Appellants] claimed [Appellant] Mr. Sterling was exposed to asbestos-containing component parts of P&H cranes used in Bethlehem Steel's "beam yard" (shipping yard).  At

his October 22-23, 2014 deposition, [Appellant] Mr. Sterling described his work loading, unloading, and operating cranes, including some P&H cranes, in the beam yard from approximately 1969 to 1978.

On December 23, [2013], P&H filed its Motion for Summary Judgment, arguing [Appellants] could not show [Appellant] Mr. Sterling was exposed to asbestos from its cranes. In their Answer, [Appellants] claimed [Appellant] Mr. Sterling's testimony, and the prior testimony of other Bethlehem Steel employees, showed [Appellant] Mr. Sterling inhaled dust from brakes and wiring on P&H cranes, and P&H had previously admitted said brakes and wiring contained asbestos.

On February 24, 2014, the [c]ourt granted P&H's Motion, finding [Appellants] failed to produce sufficient evidence [Appellant] Mr. Sterling inhaled asbestos fibers from component parts of P&H cranes. On February 26, 2014, this matter settled as to all remaining defendants.

(Trial Court Opinion, filed August 18, 2014, at 1-2) (internal citations to the record omitted). Appellants filed a timely notice of appeal on March 18, 2014. On April 2, 2014, Appellants filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellants raise a single issue for our review:

DID THE [TRIAL] COURT ERR IN FAILING TO RESOLVE ALL CONTESTED ISSUES IN FAVOR OF THE NON-MOVING PARTY INCLUDING ALL REASONABLE INFERENCES, WHEN EVIDENCE OF [APPELLANT MR. STERLING] WORKING ON, UNDER, AND IN P&H OVERHEAD CRANES AT BETHLEHEM STEEL WAS DISREGARDED?

(Appellants' Brief at 1).

In their sole issue, Appellants argue that during his tenure at Bethlehem Steel, Appellant Mr. Sterling worked on, under, and inside P&H

- 2 -

cranes. Appellants contend that by P&H's own admission, its cranes contained parts made with asbestos, including the brakes and wiring. Appellants assert Appellant Mr. Sterling's job duties constantly put him in the direct vicinity of P&H cranes, and he and his coworkers frequently saw dust produced by the cranes' asbestos-containing brakes. For example, Appellants claim that Appellant Mr. Sterling's duties as a crane man required him to assist the repairmen who regularly performed dust-producing maintenance on the brakes. Appellants suggest this brake dust continuously "filled the air surrounding [Appellant] Mr. Sterling at Bethlehem Steel." (Appellant's Brief at 5). Appellants aver that Appellant Mr. Sterling subsequently developed lung cancer due to asbestos inhalation. Appellants conclude they produced sufficient evidence for a jury to consider whether Appellants proved a causal connection between P&H cranes and Appellant Mr. Sterling's lung cancer, and this Court should reverse summary judgment in favor of P&H. We disagree.

Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law. *Mee v. Safeco Ins. Co. of Am.*, 908 A.2d 344, 347 (Pa.Super. 2006). In reviewing a trial court's grant of summary judgment:

> [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and

all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of [a] cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. In other words, whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense.

Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

**Chenot v. A.P. Green Services, Inc.**, 895 A.2d 55, 61 (Pa.Super. 2006)

(internal citations and quotation marks omitted).

Additionally, in an asbestos case:

[I]n order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of

- 4 -

the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury.

*Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 563 (Pa.Super. 2014). *See also Vanaman v. DAP, Inc.*, 966 A.2d 603, 607 (Pa.Super. 2009) (*en banc*) (stating plaintiff must establish in asbestos case that injuries were caused by product of particular manufacturer or supplier).

When evaluating the plaintiff's evidence in an asbestos case at the summary judgment stage, Pennsylvania courts apply the "frequency, regularity, proximity" standard derived from *Eckenrod v. GAF Corp.*, 544 A.2d 50 (Pa.Super. 1988), *appeal denied*, 520 Pa. 605, 553 A.2d 968 (1988) (stating whether plaintiff can defeat summary judgment motion depends on frequency of use of asbestos product and regularity of plaintiff's employment in proximity to product). "[I]t is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." *Gregg v. V-J Auto Parts, Co.*, 596 Pa. 274, 292, 943 A.2d 216, 227 (2007). Nevertheless, the criteria of frequency, regularity, and proximity "do not establish a rigid standard with an absolute threshold necessary to support liability." *Id.* at 290, 943 A.2d at 225.

Rather, they are to be applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product. [A]pplication of the test should be tailored to the facts and circumstances of the case, such that, for example, its application should become somewhat less critical where the plaintiff puts forth specific evidence of exposure to a defendant's product. Similarly, …the frequency and regularity prongs become somewhat less cumbersome in cases involving diseases that the plaintiff's competent medical evidence indicates can develop after only minor exposures to asbestos fibers.

*Id.* (internal citations and quotation marks omitted).

Instantly, the trial court reasoned as follows:

In this case, P&H was entitled to summary judgment. Even assuming the P&H cranes at Bethlehem Steel contained asbestos brakes and wiring, there was insufficient evidence from which to infer [Appellant] Mr. Sterling inhaled asbestos fibers from said brakes and wiring.

\* \* \*

[Appellant] Mr. Sterling's deposition testimony regarding his work with and around P&H cranes was insufficient to show he inhaled asbestos dust from the cranes' wiring or brakes. [Appellant] Mr. Sterling testified his work on cranes, including P&H cranes, consisted of loading and unloading steel from the cranes as a "chain man" and operating the cranes from cabs as a "crane man." He testified he was in a cab and the brakes were "out on the four wheels outside the cab." He testified the brakes were repaired by millwrights and electricians. He testified he saw dust while working [in] the steel beam yard when cranes were operating and the dust came from the wheels of the cranes. He guessed he was exposed to dust from crane brakes merely because he saw some type of dust emanating from the wheels of operating cranes. There

- 6 -

was no factual basis to support any inference he breathed the dust or the dust contained asbestos. Absent any additional evidence regarding the nature of [Appellant] Mr. Sterling's contact with crane brakes or wiring, his testimony would not support a reasonable inference he inhaled asbestos dust from wiring or brakes on P&H cranes.

The cited testimony of other Bethlehem Steel employees in other cases did nothing to show [Appellant] Mr. Sterling inhaled dust from component parts of P&H cranes. [Appellants] offered (1) Brian Gaugler's testimony, from Mr. Gaugler's own trial, that Mr. Gaugler helped change crane brakes as a chain man, crane man, marker, bar turner, and forklift operator; (2) Michael Carl's testimony, from Mr. Carl's own trial, that Mr. Carl saw the brakes on cranes while oiling and greasing the cranes as a chain man and crane man; (3) John D. Wagner's testimony, from Mr. Wagner's own trial, that Mr. Wagner worked with crane wiring and brakes as a motor inspector; and (4) John G. Weiss' testimony, from Mr. Weiss' own trial, that Mr. Weiss inhaled dust from crane brakes and wiring while tearing out crane trolleys. [Appellants] did not draw any connection between any of the foregoing testimony and [Appellant] Mr. Sterling's purported exposure. Indeed, [Appellant] Mr. Sterling's name was never mentioned by the four (4) witnesses. Even assuming these other Bethlehem Steel employees were exposed to asbestos dust from crane brakes and wiring, there was still no basis to infer [Appellant] Mr. Sterling was similarly exposed. In fact, [Appellant] Mr. Sterling never placed himself working with any wiring or brakes as did the other four (4) Bethlehem Steel employees.

In summary, the totality of [Appellant] Mr. Sterling's testimony as to P&H is as follows:

[Appellant] Mr. Sterling worked as a chain man and crane man at Bethlehem Steel. His job consisted of chaining up big piles of steel and putting them in a run and piling them. In doing so, he operated cranes, including P&H cranes. As a chain man, he would observe dust coming from the wheels of the cranes.

> [Appellant] Mr. Sterling did not testify to any information as to the nature of the dust, how far he was from the dust, whether he inhaled the dust, or whether the dust he observed contained asbestos.

(Trial Court Opinion at 2-4). (internal citations to the record omitted). The record supports the court's analysis. In answers to interrogatories, P&H conceded in general terms that it had sold some equipment and replacement component parts containing small amounts of asbestos. These admissions, however, were insufficient to establish Appellant Mr. Sterling used or worked on that equipment at Bethlehem Steel. Appellant Mr. Sterling also admitted he worked mostly on cranes supplied by other companies. Although Appellant Mr. Sterling testified he saw dust emanate from the wheel area of the cranes when the brakes were applied, he conceded there were multiple sources of dust in the beam yard. *See Krauss, supra* (stating plaintiff's speculative personal belief that product contained asbestos fails to create genuine issue of fact as to existence of asbestos in product).

Moreover, the testimony of other former Bethlehem Steel employees provided no information regarding the frequency, regularity, or proximity of Appellant Mr. Sterling's own alleged exposure to asbestos in P&H products. Appellants thus failed to adduce evidence sufficient to support an inference that Appellant Mr. Sterling inhaled asbestos from component parts of P&H cranes. Therefore, the court properly entered summary judgment in favor of P&H. *See Gregg, supra*; *Eckenrod, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/16/2015</u>