| | | |
|---|---|---|
| **CHARLES R. STEIB** | * | **NO. 2020-CA-0424** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **LAMORAK INSURANCE** | * | |
| **COMPANY, ET AL.** | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-04189, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Tiffany G. Chase)

**JENKINS, J., DISSENTS WITH REASONS**

Gerolyn P. Roussel
Jonathan B. Clement
Perry J. Roussel, Jr.
Lauren R. Clement
Benjamin P. Dinehart
ROUSSEL & CLEMENT
1550 West Causeway Approach
Mandeville, LA 70068

      COUNSEL FOR PLAINTIFF/APPELLANT

Teddy Paul Sorrells
Michael J. Remondet, Jr.
JEANSONNE & REMONDET
P. O. Box 91530
Lafayette, LA 70509

Thomas J. Cortazzo
E. Stuart Ponder
LEWIS BRISBOIS BISGAARD & SMITH, LP
400 Poydras Street, Suite 1300
New Orleans, LA 70130

      COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**February 3, 2021**

This is a wrongful death and survival action arising out of Charles Steib's death from an asbestos-related disease—mesothelioma. This appeal is from the trial court's February 26, 2020 judgment granting a summary judgment motion and dismissing two defendants—Parsons Government Services, Inc. ("Parsons") and Marathon Petroleum Company LP ("Marathon"). The narrow issue presented is whether a genuine issue of material fact exists regarding Mr. Steib's exposure to asbestos while employed by Parsons from 1975 to 1977 during initial construction of Marathon's oil refinery in Garyville, Louisiana. Finding no genuine issue of material fact exists, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2018, Mr. Steib was diagnosed with mesothelioma. Four months later, he filed a petition for damages against approximately forty defendants. In his petition, Mr. Steib averred that he contracted mesothelioma as a result of his exposure to asbestos-containing products during work he performed for various employers at various industrial work sites over the course of his career as a

1

pipefitter. According to the petition, "[a]t various times from approximately 1965 through 1998, Charles Steib worked on [various] premises [including Marathon's] where he was exposed to asbestos." The petition further alleged that Mr. Steib was employed by various employers, including Parsons in 1975. In the petition, Mr. Steib asserted multiple tort theories of recovery, including negligence, strict liability, and intentional tort.

A few months after filing suit, Mr. Steib passed away.[1] After he died, his surviving spouse—Amanda Granier Steib—and three adult children—Dwane, Donavon, and Israel Steib—substituted themselves as his statutory beneficiaries (collectively "Plaintiffs") and asserted survival and wrongful death claims.

Following discovery, Parsons filed a summary judgment motion seeking to dismiss Plaintiffs' claims against it. Parsons' summary judgment motion was premised primarily on Plaintiffs' inability to establish Mr. Steib was exposed to asbestos while working for Parsons at Marathon from 1975 to 1977. Parsons additionally contended that, in its capacity as Mr. Steib's employer, it could not be liable for Plaintiffs' wrongful death claims for exposure occurring after September 1, 1975,[2] based on immunity pursuant to Louisiana workers'

---

[1] Mr. Steib was not deposed before he died.

[2] Effective that date, mesothelioma became an occupational disease covered by Louisiana workers' compensation law. *See Spillman v. Anco Insulations, Inc.*, 07-0763, p. 7 (La. App. 1 Cir. 9/9/08), 994 So.2d 132, 136, (observing that "[i]n 1975, the legislature revised the provisions of La. R.S. 23:1031.1 regarding coverage for occupational diseases. . . . Under [the amended] version of the statute, mesothelioma is an occupational disease covered by workers' compensation").

compensation law.[3] In support of its motion, Parsons introduced excerpts from the depositions of four of Mr. Steib's former co-employees: Elton Chenier; Richard Bush; Robert Chenier; and Raymond Alonzo (the "Co-Employees"). According to Parsons, the Co-Employees were listed by Plaintiffs as potential witnesses and were deposed in this case. Mr. Steib's Social Security earnings report was attached as an exhibit to Mr. Bush's deposition and reflected that Mr. Steib worked at Parsons from the second quarter of 1975 through the first quarter of 1977. Parsons also introduced a deposition excerpt and an affidavit from Marathon's corporate representative, Roger Gautreau.

On the first business day after Parsons filed its summary judgment motion, Marathon filed an *ex parte* motion requesting to join in Parsons' motion.[4] In the *ex parte* motion, Marathon also requested to join in twelve other motions filed by other defendants; Marathon's motion stated that it was joining the motions, in general, "to the extent that said motions and memorandum do not conflict with Marathon's defenses in this matter." As to Parsons' motion, in particular, Marathon's motion stated that it was adopting only two sections—"A" and "B." Those two sections addressed Plaintiffs' allegations that Mr. Steib was exposed to asbestos while employed by Parsons at Marathon's refinery from 1975 to 1977. The remaining sections addressed issues unique to Parsons in its capacity as Mr.

---

[3] Parsons additionally moved for summary judgment on the issue of Plaintiffs' pre-death loss of consortium claims; however, Plaintiffs voluntarily agreed to dismiss those claims against Parsons.

[4] Parsons' motion was filed on a Friday; Marathon's *ex parte* motion was filed on the following Monday.

Steib's employer—statutory immunity under Louisiana workers' compensation law.

Opposing the summary judgment motion, Plaintiffs procedurally challenged Marathon's joinder in Parsons' motion on two bases—failure to properly serve and failure to comply with La. C.C.P. art. 966. Plaintiffs also moved to strike Mr. Gautreau's affidavit as not based on personal knowledge. On the merits, Plaintiffs contended that there were genuine issues of material fact regarding Mr. Steib's exposure to asbestos while employed by Parsons at Marathon.

In support of its position, Plaintiffs submitted excerpts from the depositions of the following individuals: (i) the Co-Employees; (ii) Mr. Steib's son, Dwane Steib;[5] (iii) six other individuals who were deposed in unrelated asbestos cases; and (iv) three experts, including an industrial hygiene expert, Gerald Baril. In response, Parsons (joined by Marathon) moved to exclude the deposition excerpts from unrelated asbestos cases as inadmissible hearsay and the experts' depositions as not factually supported.

The trial court rejected Plaintiffs' procedural objection to Marathon's joinder in Parson's motion and denied all the evidentiary objections. Following the hearing, the trial court rendered judgment granting the summary judgment motion and dismissing both Parsons and Marathon with prejudice.[6] The trial court only gave oral reasons for judgment:

---

[5] Dwane Steib worked at Marathon for ten years—from 1997 to 2007. He was deposed in this case.

[6] Parsons' summary judgment motion, which Marathon joined, also sought dismissal of the cross-claims by Huntington Ingalls Inc. ("Huntington") against it. According to the parties,

4

The basis for granting the Motion is in the time window where there is definitive evidence that Mr. Steib worked for Parsons at Marathon, and that's the period from '75 to '77, that and listening intently, and also reading the pleadings involved. There is a dearth of evidence that from anyone who can definitively place him working, you know, at the facility during that time window.

This appeal followed.

## DISCUSSION

Although Plaintiffs assign eight errors on appeal, the gist of their argument is that the trial court erred—procedurally and substantively—in granting the summary judgment motion and dismissing Parsons and Marathon. We first outline the applicable summary judgment standards and then separately address Plaintiffs' procedural and substantive arguments. Given our holdings, we pretermit the parties' evidentiary objections.[7]

*Summary Judgment Standards*

In reviewing a trial court's judgment granting a summary judgment motion, an appellate court applies a *de novo* standard and utilizes the same criteria that are initially employed by the trial court under La. C.C.P. art. 966. *See Harmonia, LLC v. Felicity Prop. Co., LLC*, 20-0253, 20-0254, p. 6 (La. App. 4 Cir. 11/25/20), ___ So.3d ___, ___, 2020 WL 6937836, *3 (internal quotation marks omitted)(observing that "[a]n appellate court reviews a trial court's judgment granting a motion for summary judgment *de novo*, using the same criteria that the

---

Huntington asserted cross-claims against both Parsons and Marathon identical to Plaintiffs' claims against them. Huntington neither opposed the summary judgment motion nor appealed from the trial court dismissal of its cross-claims. The judgment dismissing Huntington's cross-claims against Parsons and Marathon has now become final and is not subject to reversal by this court.

[7] Both sides re-urge the same evidentiary objections they raised in the trial court—Plaintiffs in their appellants' brief and Defendants in their answer to the appeal. We find it unnecessary to reach these evidentiary objections. Regardless of whether the evidence objected to is considered or excluded, the result is the same.

trial judge utilizes in his determination of whether summary judgment is appropriate, in the light most favorable to the non-moving party"). As we observed in the *Harmonia* case, the procedural methodology and principles governing summary judgment review are well-settled:

- The summary judgment procedure is favored and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2).

- The governing statutory provision, La. C.C.P. art. 966, provides that a motion for summary judgment shall be granted if, "[a]fter an opportunity for adequate discovery," the "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

- "A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Bufkin v. Felipe's La., LLC*, 14-0288, p. 3 (La. 10/15/14), 171 So.3d 851, 854.

- "[T]he burden of proof remains with the movant. [But], if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id.*

- "This [burden shifting] requires the [non-moving party] to make a positive showing of evidence creating a genuine issue as to an essential element of [its] claim; mere speculation is not sufficient." *Finch v. HRI Lodging, Inc.*, 49,497, p. 7 (La. App. 2 Cir. 11/19/14), 152 So.3d 1039, 1043.

- Whether a fact is material is a determination that must be made based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270; *Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337.

20-0253, 20-0254, p. 6, n. 9, ___ So.3d at ___, 2020 WL 6937836, *3.

*Procedural Arguments*

Plaintiffs raise two procedural arguments regarding the trial court's dismissal of Marathon pursuant to the summary judgment motion—Marathon's failure to properly serve its joinder motion, and the trial court's grant of relief that was not requested in the summary judgment motion. Marathon counters that these arguments lack merit and emphasizes that "[t]he case law is replete with instances of litigants adopting the summary judgment motions of other litigants." *Callis v. Jefferson Par. Hosp. Serv., Dist. #1*, 07-580, p. 6, n. 1(La. App. 5 Cir. 12/27/07), 975 So.2d 641, 644.

As to Plaintiffs' argument that it was not properly served, we find this argument unpersuasive for three reasons. First, Marathon's joinder motion did not set a court date; thus, its motion did not trigger the requirements of service under La. C.C.P. art. 1313(C).[8] Second, Plaintiffs do not dispute that they were properly served with Parsons' summary judgment motion, which Marathon joined and adopted. Third, the trial court set the hearing for Parsons' motion, which Marathon joined, as well as multiple other defendants' pending summary judgment motions, in an amended scheduling order that was provided to Plaintiffs' counsel.

As to Plaintiffs' argument that the trial court granted relief not requested, the governing provision is La. C.C.P. art. 966(F), which provides that a summary judgment may be "rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time." Stated otherwise, "[a] court cannot render a motion for summary judgment dismissing a claim which has not been challenged by the pleading." *Hoover v. Hoover*, 01-2200, p. 9 (La. 4/3/02),

---

[8] La. C.C.P. art. 1313(C) provides that "[n]otwithstanding Paragraph A of this Article, if a pleading order sets a court date, then service shall be made by registered or certified mail or as provided in Article 1314."

7

813 So.2d 329, 334.[9] Applying these principles, Parsons' motion, which Marathon adopted, raised and challenged all the claims that the trial court dismissed—that is, all claims arising out of Mr. Steib's exposure to asbestos while working for Parsons at Marathon from 1975 to 1977. Plaintiffs' suggestion to the contrary is based on two grounds: (i) Robert Chenier's affidavit; and (ii) Plaintiffs' allegation in their petition.

The attestation in Robert Chenier's affidavit states that he worked with Mr. Steib at Marathon not only on the initial construction in the 1970s, but also on maintenance jobs in the 1980s. Robert Chenier, however, recanted the attestation that Mr. Steib worked with him on maintenance jobs in his subsequent deposition. Twice in his deposition, Robert Chenier confirmed that he did not remember Mr. Steib working maintenance jobs with him at Marathon. *See Broussard v. Gulfport Energy Corp.*, 18-840, p. 7 (La. App. 3 Cir. 6/5/19), 274 So.3d 613, 618 (observing that "[a]ny inconsistency with the date initially provided in Benoit's deposition was clarified through his additional deposition testimony"); *Sonier v. Winn-Dixie Montgomery, LLC*, 290 F.Supp.3d 569, 578 (E.D. La. 2018) (observing that "[t]he Court is unwilling to consider statements from an affidavit when Sonier makes it evident he disagrees with the affidavit's statements in two separate depositions"). Moreover, Mr. Steib's son, Dwane Steib, testified in his deposition that his father never worked maintenance at Marathon.

---

[9] *See also Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 19-0896, p. 12, n. 15 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1217 (observing that "the issue of whether the speed bumps presented an unreasonable risk of harm was not properly raised in the trial court and, under La. C.C.P. art. 966(F) cannot be the basis for this court affirming the summary judgment"); *Bourg v. Safeway Ins. Co. of Louisiana*, 19-0270, p. 18, n. 10 (La. App. 1 Cir. 3/5/20), 300 So.3d 881, 893 (observing that "the portion of September 18, 2018 judgment rendered against Chris Martinez was in error because Ms. Bourg only filed her motion for summary judgment against Safeway").

As noted, Plaintiffs also rely on the allegation in their petition, which contains a vague reference to Mr. Steib working at Marathon at times other than 1975 to 1977. An allegation in a petition is insufficient to create a genuine issue of material fact. *See Richoux v. Tulane Med. Ctr.*, 617 So.2d 13, 17 (La. App. 4th Cir. 1993) (citing *Bank of Iberia v. Hewell*, 534 So.2d 143 (La. App. 3rd Cir. 1988)) (observing that "[p]laintiff was resting merely on the allegations in her pleadings which were not sufficient to create a genuine issue of material fact").

The record reflects that Plaintiffs' claims against Marathon and Parsons completely overlap. All Plaintiffs' claims are based on Mr. Steib's alleged exposure to asbestos during the period of his employment with Parsons at Marathon, which was 1975 to 1977. The trial court did not grant relief not requested or challenged by the pleadings. Both of Plaintiffs' procedural arguments are unpersuasive.

*Substantive arguments*

The applicable substantive law is Louisiana tort law. Traditional tort theories apply in evaluating liability in an asbestos case. Those tort theories require proof of causation—that the plaintiff was exposed to asbestos for which the defendant is responsible. *Emery v. Owens-Corp.*, 00-2144, p. 12 (La. App. 1 Cir. 11/9/01), 813 So.2d 441, 452 (citing *Quick v. Murphy Oil Co.*, 93-2267, p. 8 (La. App. 4 Cir. 9/20/94), 643 So.2d 1291, 1294); *Stephens v. Union Pac. R.R. Co.,* 935 F.3d 852, 855 (9th Cir. 2019) (observing that "[a]sbestos cannot cause injury in someone who is not exposed to it, so in the context of asbestos-related negligence, exposure is a necessary element of the claim"). "Generally, causation has been explained and satisfied by demonstrating a nexus, a link, or some form of traceability between wrongful conduct and an injury." Danielle Conway-Jones, *Factual*

9

*Causation in Toxic Tort Litigation: A Philosophical View of Proof and Certainty in Uncertain Disciplines*, 35 U. RICH. L. REV. 875, 886 (2002). In determining causation, it is irrelevant whether the defendant's actions were "'lawful, unlawful, intentional, unintentional, negligent or non-negligent.'" *Roberts v. Benoit*, 605 So.2d 1032, 1042 (La. 1991) (quoting Green, *The Causal Relation Issue in Negligence Law*, 60 MICH. L. REV. 543, 549 (1962)). Hence, the same analysis applies to all the causes of action Plaintiffs assert in their petition.

The requirement in an asbestos case that the plaintiff establish causation has been characterized as the "premier hurdle." *Rando v. Anco Insulations Inc*., 08-1163, 08-1169, p. 31(La. 5/22/09), 16 So.3d 1065, 1088.[10] "[N]otwithstanding the difficulty of proof involved, a plaintiff's burden of proof against multiple defendants in a long-latency case, such as a tort claim for mesothelioma, is not relaxed or reduced because of the degree of difficulty that might ensue in proving the contribution of each defendant's product to the plaintiff's injury." *Id.*, 08-1163, 08-1169, pp. 35-36, 16 So.3d at 1091 (internal citation and quotations omitted).

Louisiana courts apply a substantial factor causation standard, which is not limited to products liability cases; as this court observed in *Thomas v. A.P. Green Indus., Inc.*, 05-1064, pp. 22-23 (La. App. 4 Cir. 5/31/06), 933 So.2d 843, 859-60:

> A substantial factor test is used by Louisiana courts to determine whether exposure to a particular asbestos-containing product was a cause-in-fact of a plaintiff's asbestos-related disease. *Egan v. Kaiser Aluminum & Chemical Corp.*, 94-1939, p. 11 (La. App. 4 Cir. 5/22/96), 677 So.2d 1027, 1034–35 (citing *Quick*, *supra* ); *see also Vodanovich v. A.P. Green Industries, Inc.*, 2003-1079, pp. 3-

---

[10] *Torrejon v. Mobil Oil Co.*, 03-1426, p. 18 (La. App. 4 Cir. 6/2/04), 876 So.2d 877, 890 (quoting Brian M. DiMasi, Comment, *The Threshold Level of Proof of Asbestos Causation: The "Frequency, Regularity and Proximity Test" and a Modified Summers v. Tice Theory of Burden–Shifting*, 24 Cap. U.L. Rev. 735, 738-41 (1995)); Steve C. Gold, *Drywall Mud and Muddy Doctrine: How Not to Decide A Multiple-Exposure Mesothelioma Case*, 49 Ind. L. Rev. 117 (2015) (observing that "factual causation has proven to be the most durable, controversial, and intractable difficulty in toxic tort cases").

4 (La. App. 4 Cir. 3/3/04), 869 So.2d 930, 932-933; *see also Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076 (5th Cir.1973). Although those cases involved product liability defendants and this case involves a premises owner defendant, we have held that the same causation standard applies. *Zimko v. American Cyanamid*, 2003-0658, p. 26 (La. App. 4 Cir. 6/8/05), 905 So.2d 465, 485, *writ denied*, 2005-2102 (La. 3/17/06), 925 So.2d 538. Simply stated, the exposure has to be a substantial contributing factor to the plaintiff's disease. *Id.*

Here, we find the same causation standard applies to Plaintiffs' claims against Parsons, in its capacity as an employer, and Marathon, in its capacity as a premises owner. As noted elsewhere in this opinion, Parsons (joined by Marathon) based its summary judgment motion principally on Plaintiffs' failure to establish causation—that is, Plaintiffs' inability to establish Mr. Steib was exposed to asbestos while working for Parsons at Marathon. Plaintiffs contend that the trial court erred in granting the summary judgment motion given the substantial evidence they submitted establishing such exposure. According to Plaintiffs, the evidence they submitted reflects that asbestos-containing materials—including gaskets, insulation, packing, blankets, and gloves—were used during Parsons' initial construction of Marathon's refinery. Plaintiffs contend that Mr. Steib was exposed to respirable asbestos fibers from those asbestos-containing materials.

Defendants counter that Marathon's refinery was built after the Occupational Safety and Health Act ("OSHA") was enacted. *See Rando*, 08-1163, 08-1169, p. 15, 16 So.3d at 1079 (observing that in 1971 "OSHA synthesized a growing body of scientific and medical evidence and formally recognized mesothelioma as one of the hazards associated with asbestos"). According to Defendants, Parsons' construction plans for Marathon's refinery specified that all thermal-pipe insulation would be asbestos free and called for the use of asbestos-containing gaskets only in

11

limited circumstances. Defendants emphasize the lack of any evidence that Parsons deviated from its plans and specifications.

Although Plaintiffs introduced evidence—including excerpts from the depositions of multiple individuals who testified in unrelated asbestos cases—attempting to create a factual dispute regarding whether the construction of Marathon's refinery was asbestos free, we find it unnecessary to address that issue. Even assuming Marathon's refinery was constructed with some asbestos-containing materials, evidence of the mere physical presence of asbestos-containing materials at a particular job site is insufficient to defeat an employer's or premises owner's summary judgment motion. *See Sterling v. P & H Mining Equip., Inc.*, 113 A.3d 1277, 1282 (2015) (observing that "[t]he cited testimony of other Bethlehem Steel employees in other cases did nothing to show [Appellant] Mr. Sterling inhaled dust from component parts of P & H cranes"); *see also Abram v. EPEC Oil Co.*, 05-0626, p. 6 (La. App. 4 Cir. 6/28/06), 936 So.2d 209, 213 (quoting *Roberts v. Owens-Corning Fiberglass Corp.*, 03-0248, p. 12 (La. App. 1 Cir. 4/2/04), 878 So.2d 631, 642); *See also Fiffick v. GAF Corp.*, 412 Pa.Super. 261, 267, 603 A.2d 208, 211 (1992) (observing that "[t]he motion for summary judgment could not be defeated by a mere showing that Owens-Corning's product had been present in a large steel plant at unspecified times and in unquantifiable amounts");

At the summary judgment stage, a plaintiff must submit specific evidence showing potential exposure to asbestos-containing materials for which the defendant is responsible in order to defeat the defendant's motion for summary judgment. *See Thibodeaux v. Asbestos Corp., Ltd.*, 07-0617, p. 14 (La. App. 4 Cir. 2/20/08), 976 So.2d 859, 867. Plaintiffs were required to present some evidence

linking the presence of asbestos-containing materials with the work that Mr. Steib performed for Parsons at Marathon during the relevant time window—from 1975 to 1977. Simply establishing that asbestos-containing materials were present at some time in some place in Marathon's refinery is insufficient to defeat Defendants' summary judgment motion.

Here, it is undisputed that Parsons constructed Marathon's Garyville refinery[11] and that Mr. Steib worked for Parsons on that initial construction job from 1975 to 1977. Both sides agree that the primary evidence regarding Mr. Steib's potential exposure to asbestos-containing materials while working for Parsons at Marathon is contained in the depositions of three individuals—Elton Chenier, Robert Chenier,[12] and Raymond Alonzo. These three individuals are the only ones Plaintiffs identify as having any knowledge of Mr. Steib's work for Parsons at Marathon during the relevant time window. Plaintiffs characterize these three individuals as Mr. Steib's "direct co-workers."[13] To adequately address the issues presented, a brief synopsis of these three individuals' deposition testimony is necessary.

*Elton Chenier*

Elton Chenier testified that he and Mr. Steib worked for Parsons as forepersons during the construction of Marathon's refinery. Elton Chenier's testimony included both generalities and specifics regarding that work.

---

[11] The refinery was originally designed and constructed for the Energy Company of Louisiana ("ECOL"). Marathon took over the refinery in 1976.

[12] Elton Chenier and Robert Chenier are third cousins. For ease of discussion, we refer to them by their full names.

[13] As noted elsewhere in this opinion, Mr. Steib was not deposed before his death.

In general, Elton Chenier testified that asbestos gaskets, blankets, gloves, and packing were used on the Marathon job. He testified that Mr. Steib would have worked with these same asbestos-containing materials and would have worked around others using these materials. He further testified that some of the gaskets had to be cut and that gaskets had to be removed during the testing of lines, which removal was done using a buffer and wire brush to clean the flange.

According to Elton Chenier, he and Mr. Steib, worked as forepersons at Marathon. Given that he and Mr. Steib worked as forepersons, Elton Chenier testified that Mr. Steib would not have been removing or cutting gaskets. An exception, however, would have been if they, as forepersons, were training an apprentice; forepersons would have performed these activities when training other pipefitters working for them. Elton Chenier also testified that they had to work around insulators on this construction job. Elton Chenier observed that they would work on scaffolding that had insulation residue on it from the work of the insulators.

In specific, Elton Chenier testified that he and Mr. Steib never worked side by side at Marathon; rather, they worked in completely different units. Elton Chenier worked in Unit 14; Mr. Steib worked in Unit 15. When asked whether he observed anyone working on Unit 15, Elton Chenier replied that he knew Mr. Steib worked there and that "[w]e might have communicated at safety meetings and stuff like that." He further replied that he saw people working entirely outdoors in Unit 15 performing "routine pipefitter work." Elton Chenier, however, confirmed that he never worked in Unit 15, that he had no idea how many people worked in Unit 15, that he never observed Mr. Steib working on Unit 15, and that he did not know if Mr. Steib worked around insulators.

14

*Robert Chenier*

Robert Chenier testified that he worked with Mr. Steib building the Marathon facility and that they worked in the same unit.[14] According to Robert Chenier, his position on this job was as a welder; Mr. Steib's position was as a pipefitter. Robert Chenier testified that he remembered seeing Mr. Steib working on the Marathon job. He further testified that Mr. Steib may have been exposed to asbestos from his work around insulation and his work with gaskets and around others handling asbestos gaskets. As to the gaskets, however, Robert Chenier testified that his basis for stating that there were asbestos gaskets present was his belief that "all the gaskets in those days was asbestos."[15] Robert Chenier, however,

---

[14] Robert Chenier's affidavit, which Plaintiffs also introduced, included the following attestations regarding his and Mr. Steib's work at Marathon:

- That he worked with Charles Steib at the Marathon facility in Garyville, L[ouisiana] [d]uring both new construction and maintenance in the 1970s and 1980s;

- That during the construction of the Marathon facility, he and Charles Steib had to work in the immediate vicinity of various crafts, including pipefitters handling asbestos gaskets and insulators who were cutting and applying insulation for use on hot lines and hot equipment, which created visible dust; [and]

- That during the maintenance jobs he worked with Charles Steib at Marathon, they had to work with asbestos gaskets and work in the immediate vicinity [of] others working with asbestos gaskets, including removing asbestos gaskets with a scrapper and wire brush, which created visible dust[.]

As discussed elsewhere in this opinion, the attestations in the affidavit regarding working with Mr. Steib during the maintenance jobs was recanted by Robert Chenier at his subsequent deposition.

[15] Robert Chenier's testimony was as follows:

Q. What if anything during this new construction period would have exposed [Mr.] Steib to asbestos?

A. Insulation

Q. Okay.

A. Insulation of the pipe, and probably the gaskets.

Q. Okay?

15

admitted that he had no personal knowledge of seeing Mr. Steib working with gaskets or working near insulators at Marathon.

*Raymond Alonzo*

Raymond Alonzo testified that he worked with Mr. Steib on new construction at Marathon. Mr. Alonzo, however, did not know when they worked together, who they worked for, what Mr. Steib did on that job, or what unit in which they worked.[16] In response to the inquiry of what sources of asbestos-containing insulation or gasket material, if any, Mr. Steib may have been exposed to at Marathon, Mr. Alonzo identified insulation dust.[17] Mr. Alonzo further

---

A. I'm sure he hooked - - I'm sure he, uh - - he hooked the flanges together. And all - all the gaskets in those days was asbestos.

[16] Mr. Alonzo's testimony was as follows:

Q. Did you ever work with Mr. Steib at Marathon Oil?

A. Yes.

Q. Do you know when that was?

A. No, I don't.

Q. Do you know what kind of job it was?

A. Just construction. New construction.

Q. Do you remember who the two of you were working for when you were at Marathon Oil?

A. No, I don't.

Q. Do you remember what Mr. Steib was doing on that job?

A. No.

Q. Do you remember any specific unit you were working in?

A. No, I don't.

[17] Mr. Alonzo's testimony was as follows:

testified that he specifically recalled Mr. Steib handling asbestos gaskets at Marathon, that the gaskets were being used on hot lines and equipment, that you could actually see remnants of the asbestos sticking out of the gaskets, and that exposure would occur when handling the gaskets.[18] Earlier, in the same deposition,

---

Q. Is there anything you can tell us about the work that you did with Mr. Steib at Marathon, um - - is there anything you can tell us about how he may have been exposed to insulation or gasket material on that job?

A. Well, when - - when you walk through an area and the insulators are in the pipeline putting insulation on, it falls and you get exposed to it.

Q. Do you remember that happening to Mr. Steib at Marathon?

A. Yes.

Q. Do you know who was working with the insulation that you saw Mr. Steib being exposed to at Marathon?

A. No, I don't.

Q. Do you remember what the insulation was coming off of?

A. Pipes that we were putting on.

Q. Was the insulation being installed on the pipes or removed from the pipes?

A. Installed.

Q. Was that creating dust?

A. Yes.

Q. And did you see Mr. Steib in that dust?

A. Yes.

[18] Mr. Alonzo's testimony was as follows:

Q. Okay. And at Marathon you saw Charlie Steib installing gaskets in piping that was hot piping.

A. Yes.

Q. And again, um – in handling gaskets here –and those gaskets for hot piping were called asbestos gaskets. Correct?

A. Yes.

Q. And so, again, you describe the gaskets there as being, um – asbestos gaskets?

17

however, Mr. Alonzo testified that the gaskets he was Mr. Steib working with at Marathon were Garlock gaskets. Mr. Alonzo, however, admitted that he was unsure whether the gaskets contained asbestos.[19] Mr. Alonzo further testified that the gaskets he saw Mr. Steib working with at Marathon were preformed.

The jurisprudence has held that the causation standard "can be met by simply showing that [the plaintiff] was actively working with asbestos-containing materials, such as insulating pipes or exhaust systems." *McAskill v. Am. Marine Holding Co.*, 07-1445, p. 7 (La. App. 4 Cir. 3/4/09), 9 So.3d 264, 268. A review of the above testimony reveals that only one of the three witnesses testified to having seen Mr. Steib working with asbestos-containing materials at Marathon during the pertinent time window—Mr. Alonzo. Elton Chenier never worked in the same unit as Mr. Steib and, thus, was not in a position to observe Mr. Steib's work activity. Robert Chenier acknowledged that he had no personal knowledge of seeing Mr. Steib working with gaskets or working near insulators at Marathon.

---

A. Yes.

Q. They would have had the remnants of asbestos sticking out the sides of the gasket?

A. Yes.

Q. And so just by handling those gaskets you and Charlie Steib would have been exposed to asbestos?

A. Yes.

[19] Mr. Alonzo's testimony was as follows:

Q. Do you know what kind of gaskets Mr. Steib was using at Marathon?

A. Garlock.

Q. Were those asbestos gaskets?

A. I believe they were. I'm not sure.

Mr. Alonzo's testimony was that he saw Mr. Steib working around insulation dust and asbestos gaskets during the construction at Marathon. As to the insulation, Mr. Alonzo's testimony was in response to questioning about what, if anything, may have exposed Mr. Steib to asbestos dust. Moreover, as Parsons emphasizes, Mr. Alonzo failed to "offer any information as to the material components or any other identifiable characteristics of the insulation he saw and/or that this insulation deviated from the original plans and specifications for the facility." Indeed, Mr. Alonzo admitted that he did not know who was putting on the insulation that he saw Mr. Steib being exposed to dust from. The mere possibility or conjecture that the insulation contained asbestos is speculative and insufficient to establish exposure. *See Finch*, 49,497, p. 7, 152 So.3d at 1043 (observing that "mere speculation is not sufficient" to defeat summary judgment).

As to the gaskets, Mr. Alonzo described the gaskets he saw Mr. Steib working with at Marathon as preformed, Garlock gaskets. But, he provided internally inconsistent testimony in his deposition regarding whether the gaskets contained asbestos. At one point, he testified that he was unsure if the Garlock gaskets that he witnessed Mr. Steib working with contained asbestos; at another point, he testified that the gaskets had asbestos remnants sticking out the sides of them.

Marathon argues that Mr. Alonzo's admission that he was unsure if the gaskets contained asbestos should preclude relying on his testimony to create a genuine issue of material fact. In support, Marathon emphasizes Mr. Alonzo's concession that he did not know when he and Mr. Steib worked together, who they worked for, what Mr. Steib did on that job, or what unit in which they worked. Plaintiffs counter that "Marathon does not dispute that asbestos gaskets were used

19

in construction of the facility" and point out that Marathon's attempts to attack the credibility of Mr. Alonzo's testimony is improper on a summary judgment motion.

Credibility calls, as Plaintiffs contend, cannot be made in ruling on a summary judgment motion. *See M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't,* 15-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320. The situation presented here is not one of making a credibility call; rather, the situation presented here is one of a witness giving internally inconsistent testimony in the same deposition. Mr. Alonzo's internally contradictory testimony regarding Mr. Steib's handing of asbestos-containing gaskets is insufficient to create a triable issue of fact. *See George v. Dover Elevator Co.*, 02-0821, p. 4 (La. App. 4 Cir. 9/25/02), 828 So.2d 1194, 1197 (observing that "[a]n inconsistent affidavit offered only after the motion for summary judgment was filed is not sufficient to create a genuine issue of material fact where no justification for the inconsistency is offered"); *See, e..g., Davis v. Foster Wheeler Energy Corp.*, 205 Cal.App.4th 731, 140 Cal.Rptr.3d 682, 685 (2012) (another asbestos exposure case).

Regardless, Mr. Alonzo's deposition testimony regarding the gaskets was speculative. As Parsons emphasizes, Mr. Alonzo failed to provide any testimony "regarding style numbers or any other identifying information that would suggest that the gaskets contained asbestos other than that he believed they were Garlock gaskets." Parsons further emphasizes that simply "because a particular witness identifies a product by its generic name or manufacturer, fails to recognize that not all products manufactured by a particular company contained asbestos as a component part." Therefore, we find Mr. Alonzo's reference to the gaskets as

Garlock gaskets was insufficient to defeat summary judgment because it is speculative and based on conjecture. *See Finch*, *supra*.[20]

Summarizing, Plaintiffs presented insufficient evidence of causation to create a genuine issue of material fact as to that essential element of their claims against Parsons and Marathon. The trial court, thus, did not err in granting the summary judgment motion and dismissing Parsons and Marathon.

## **DECREE**

For the forgoing reasons, the trial court's judgment is affirmed.

**AFFIRMED**

---

[20] As Parsons points out, even assuming the gaskets that Mr. Steib worked with at Marathon contained asbestos, Mr. Alonzo described those gaskets as preformed. Plaintiffs' industrial hygiene expert, Gerald Baril, was questioned about exposure to preformed asbestos gaskets. Although he was positive that cutting asbestos sheets would have exposed Mr. Steib to asbestos, Mr. Baril was unable to offer any opinion as to the handling of preformed asbestos-containing gaskets.